STANDARD OIL COMPANY OF INDIANA *v.* HENNINGER.

[No. 14,968.   Filed June 28, 1935.   Rehearing denied
October 18, 1935.]

*Samuel D. Miller, Sidney S. Miller, George R. Jeffrey,*
and *Harker & Irwin,* for appellant.

*Christian & Waltz, Thomas E. Kane,* and *Will Robison,* for appellee.

KIME, J.—The appellee brought this action by a complaint in one paragraph to recover damages for personal injuries alleged to have been sustained by reason of appellant's negligence.   To this complaint there was filed only a general denial.   The issues were tried to a

jury which rendered a verdict in favor of the appellee for three thousand ($3,000.00) dollars, upon which judgment was rendered. Following the overruling of a motion for a new trial this appeal was perfected, assigning as error the overruling of such motion. The grounds of the motion were that the verdict of the jury was not sustained by sufficient evidence; that the verdict was contrary to law; that there was error in overruling the motion for peremptory instruction at the close of plaintiff's evidence; that there was error in overruling the motion for peremptory instruction at the close of all the evidence; that there was error in refusing to give instructions numbered 6, 7, 8, 9, 12, and 13, requested by appellant; and that there was error in giving instructions numbered 11, 12, 13, and 14 on the court's own motion; and error in the admission of certain evidence.

The complaint was as follows:

"The plaintiff, George S. Henninger, complains of the defendant, Standard Oil Company of Indiana, and for cause of complaint, alleges:

"That upon December 30, 1930, the defendant was and ever since has been a corporation, duly organized under the laws of the State of Indiana, and was at said time, and ever since has been, engaged in selling and marketing gasoline, oils and other products to the general public throughout said state, and at said time, and ever since, the defendant has maintained various stations for the disposal of said merchandise and products, called filling stations, throughout said state, which filling stations are conveniently located upon the public highways of the state and adjacent to the streets of the various cities and towns in said state.

"That upon December 30, 1930, the defendant owned, maintained and operated a certain filling station located upon a lot at the northeast corner of the intersection of Tenth and Cooner Streets, in the city of Noblesville, said county and state, where the defendant was engaged in selling gasoline, oil and various products and as a part of the inducement held out to the public and to induce people passing

said filling station to stop and purchase merchandise and wares offered by the defendant, held out to the public by various advertisements, and signs that they would furnish road maps showing the routes of the various highways in and throughout said state, and that they would give out information pertaining to said highways and routes, between the various cities and towns of this state.

"That the defendant also held out to the citizens of this state, and to the persons passing said filling station, that said filling station was equipped with toilet facilities and invited the public generally, in-including this plaintiff, to use the toilet facilities, and to use their road map service, such as it was, and held out generally to the public, that said accommodations would be furnished free of charge, to any person or persons desiring to avail themselves of the same, and that said filling station was a reasonably safe place for those desiring to use the same for such purposes.

"That in the rear of said filling station, the defendant maintained a lavatory and toilet room, which was divided from the storeroom of the defendant, which was in the front part of said building, by a door, and near the door to said toilet, the defendant also maintained a door of similar appearance, leading to a very steep, dark, dangerous and treacherous stairway, into the basement, under said building, and upon said day, the defendant carelessly and negligently permitted said door leading to said stairway to be unlocked and wholly unguarded and at said time the plaintiff came upon said premises, and into said store room of defendant, for the purpose of gaining information as to the highways leading north from the city of Noblesville, and for the purpose of using the toilet in said building and after acquiring information pertaining to the highways, which he desired, and without any knowledge on the part of the plaintiff, of the existence of said stairway and believing that the door leading to said stairway was the door to the toilet, asked permission to use the toilet, whereupon the defendants servant, agent and employee, in charge of said station indicated that plaintiff had permission to use said toilet; that plaintiff, acting upon his said belief, and being induced by the invitation extended to him by the de-

fendant's said servant, agent and employee, opened the door leading to said stairway, and stepped through the threshold of said door, and by reason of the fact that the defendant had carelessly and negligently failed to lock and guard said door leading to said stairway and had carelessly and negligently failed to provide lights or guards in and to said stairway, the plaintiff could not see or realize the dangerous condition then and there existing, and plaintiff immediately, without warning of said danger, fell down said stairway into the basement, a distance of to wit: more than seven feet, injuring, bruising and contusing his head and scalp, bruising, wrenching and spraining his right hip and back, breaking two of his teeth; whereby he was crippled and disfigured, causing him great nervous shock, pain and anguish; which said injuries are permanent and were proximately caused by the negligence and carelessness of the defendant, as herein alleged.

"That on account of said injuries, the plaintiff had been compelled to expend the sum of $———— for medical attention and nursing and will be compelled to expend large sums for such purpose in the future.

"That as the proximate result of the negligence and carelessness of the defendant, in so inflicting said injuries upon the plaintiff, plaintiff has been damaged in the sum of $10,000.00.

"Wherefore, the plaintiff demands judgment against the defendant for $10,000.00 and all other proper relief."

The evidence most favorable to appellee discloses that appellee, with a guest, was en route to Windfall, and, seeking a short route, drove into the filling station of appellant at Noblesville, never having been a customer of nor frequented this particular station before this visit, and, although there was no car seen on the right drive under a canopy, the appellee disregarded a sign reading "Please drive to the right," which they testified they did not see, drove left outside the canopy, stopped his car at such a location as to show no intention of purchasing gas, shut off the motor and left his guest therein, entered the station proper, never having entered there before, and asked to see a map, saying that he did

not know the road. A map was spread out on a desk in the northwest corner of the interior of the station and the attendant told appellee and pointed out on the map how to reach his destination. Appellee then testified that he asked, "May I have the use of your washroom," and that he was answered "Yes." That while the question was asked the attendant was at the appellee's left facing the desk and to the attendant's left there was a stool and that the attendant pulled back "just like a gentleman would do" but without indicating in any manner that the washroom was through the door behind appellee; that there was a door behind the appellee; that he turned, took hold of the handle, opened the door "without knowing what was there" and of his own volition, without looking, walked in and his momentum carried him through the door and down the stairs; that in spite of the fact that the appellee testified the attendant was in the station he did not go into the basement to assist the appellee, and the appellee testified he crawled on his hands and knees up the stairs until at the top the attendant assisted him; that a physician was secured who attended appellee; and that appellee drove home to east Indianapolis, driving the car himself.

Appellee testified that at the time he entered the station he had no intention of buying gas or any other products offered for sale by the appellant but that after being directed to his destination (Windfall) and being given permission to use the washroom he then formed an intention of buying gas but did not disclose this intention to the attendant or anyone else. The following diagram will be of assistance in understanding the situation. Appellee entered the station at the door marked "A." Directly across from "A" was the door to the wash room "B" with the word "lavatory" printed in letters 1½ inches high, which was clearly legible.

Appellee then walked over to the desk marked "D," stood facing the desk with the station attendant to his

PLAN OF INTERIOR OF FILLING STATION—
A. ENTRANCE TO INTERIOR OF STATION
B. ENTRANCE TO TOILET ROOM
C. ENTRANCE TO STAIRWAY-BASEMENT
D. DESK WHERE MAP WAS EXAMINED
E. OIL PUMPS (NOT INVOLVED)
F. TIRE SHELF CLOSET (NOT INVOLVED)
G—H—I—J—K— WINDOWS

left and to the left of the attendant was a stool which the attendant had pulled away from in front of the desk so that the two men could stand there.

Appellee's complaint proceeds on the theory that he was an invitee by implication because the appellant held out as an inducement in attracting customers that it would furnish maps and toilet facilities. All of the

trial was conducted upon this theory, the jury being specifically instructed thereon and instructions relative to licensees being refused.

There is no evidence in the record, nor evidence from which an inference might reasonably be drawn, that the appellant held out to the public by any advertisement or signs that it would furnish road maps and give information pertaining to highways and routes.

There is no evidence in the record, nor evidence from which an inference might reasonably be drawn, that the appellant held out to the public and to a person passing said filling station that it was equipped with toilet facilities nor that it invited the public generally, including this plaintiff, to use such toilet facilities or to use any alleged road map service.

If the appellee was a mere licensee he took the premises as he found them and if he was an invitee the duty then rested upon the appellant to exercise ordinary care toward the appellee. Under the circumstances it is not necessary for us to determine whether or not appellee was an invitee or licensee. The closed door to the basement was not a trap or pit-fall and due precaution had been taken by the closing of the door against its improper use. Negligence upon which this action is predicated is that of failing to lock the door. The appellant was not bound to anticipate that people coming upon the premises would assume that every door leading from the main part of the station led to the washroom nor that persons with the ordinary use of their senses would precipitately open doors therefrom and enter without thought as to where they lead.

From the main part of this particular station there were two doors and the appellee did not have the right to act solely upon the belief that any door would be locked unless intended for some particular purpose. The mere fact that the door was there was a sign that

it was a means of exit or entrance to or from some other part of the station: The appellee did not have the right to assume, without knowledge, or its equivalent, the character of the place to which it affords access. The opening was duly guarded by the closed door as to all persons exercising ordinary care. Appellee testified that he went through the door of his own volition and that the attendant made no motion or gesture indicating where the washroom was and that the door was closed and that he had to turn the handle to open it and that after the attendant had given him permission to use the wash room he immediately turned around and walked through this door and that the momentum of his body carried him through the opening and down the stairs.

The Supreme Court of Iowa, in the case of *McNaughton* v. *Illinois Central R. Co.* (1907), 136 Iowa 177, 178, 113 N. W. 844, a case similar to this, said: "But it can hardly be said that a closed door to the stairway down to a basement with door knob and catch constitutes a trap or pitfall. Every precaution had been taken, save that of locking it, against its improper use. The heating apparatus was located in the basement, access to which was by stairway, and leaving the door used by the employes fastened so as to open only upon turning the knob, though unlocked, especially in daylight, when anyone upon opening it could plainly see the stairway, was not a negligent act. The company was not bound to anticipate that passengers will assume that every door from the room opens into a toilet, or that without the ordinary use of their senses they will precipitately open the doors therefrom and enter without thought as to where they lead. From such rooms usually there are several doors, and no one has the right to act unreservedly upon the belief that any door would be locked unless intended for some particular purpose. The fact that a door is there is a warning that it is the means

of exit or of entrance from or to some other apartment, and a way up or down stairs, or to a baggage room, or to a closet; and no one has the right to assume, without knowledge, or its equivalent, the character of the place to which it affords access. The door was maintained in a way convenient for the employees in caring for the furnace, and not dangerous to the public. . . . Here the opening of the stairway was from the room, and, as we have seen, duly guarded as to all persons in the exercise of ordinary care." See also *Fleury* v. *Central Publishing House* (1928), 118 Ohio St. 154, 160 N. E. 679.

The evidence wholly fails to establish any legal duty owing to appellee from the appellant which was violated and the conduct of the appellee, as disclosed by the uncontradicted evidence, established contributory negligence, which was the proximate cause of the injury. Such negligence is contributory negligence as a matter of law and for this reason also the verdict of the jury is contrary to law and the motion for a new trial should have been sustained.

The judgment of the Clinton Circuit Court is reversed with instructions to grant appellant's motion for a new trial.

Curtis, J., dissents.