NORTHERN INDIANA PUBLIC SERVICE COMPANY *v.*

HOWARD, ADMINISTRATRIX, ETC.

[No. 18,819. Filed January 22, 1957. Rehearing denied
March 6, 1957. Transfer denied June 19, 1957.]

*Kizer & Neu,* of Plymouth, for appellant.

*Paul E. Reed,* and *Orville W. Nichols, Jr.,* both of Knox, for appellee.

KELLEY, P. J.—This is an action brought by appellee against appellant to recover damages for the wrongful death of her decedent allegedly caused by appellant's negligence in maintaining live high voltage electric wires not fully and completely insulated and in not designating by color or other designation, instantly apparent, the crossarms or supports bearing said wires,

as a result of which negligence appellee's decedent, her husband, without knowledge of the dangerous and deadly electrical voltage of said wires, was killed when a metal antenna he was then erecting came in contact with said wires.

Appellant's demurrer to the complaint was overruled. The cause was submitted to a jury which returned a verdict for appellee against appellant upon which the court entered judgment. Appellant's motion for a new trial was overruled.

The errors assigned are (1) the overruling of appellant's demurrer to appellee's amended complaint; (2) the overruling of appellant's motion for a new trial. The motion for new trial was upon the grounds that the verdict was not sustained by sufficient evidence and was contrary to law, error in overruling appellant's motion for directed verdict at conclusion of appellee's evidence, error in giving the court's preliminary instructions 2 and 3, error in giving appellee's instructions 1 and 4, and error in refusing to give appellant's tendered instructions 1, 2, and 16. The charged error of giving appellee's instruction 4 and the refusal to give appellant's tendered instruction 16 are not discussed by appellant and are considered waived.

Appellant's main contention is that, under the facts of the case, the provisions of Sec. 20-304, Burns' 1950 Replacement, are not applicable and, therefore, the court committed reversible error in instructing the jury that if it found that the appellant failed to "obey" the provisions of the statute, it was guilty of negligence. Appellee admitted in argument that if we concluded that the statute was not applicable, a reversal should follow.

The referred to statute, in material and pertinent substance, reads as follows:

"It is hereby made the duty of all owners, contractors, subcontractors, corporations, agents or persons whatsoever engaged . . . in the transmission, generation or use of any electricity or other power . . . to see and to require . . . that in the transmission and use of electricity of a dangerous voltage, full and complete insulation shall be provided at all points where the public or any employees of the owner, contractor or subcontractor transmitting or using said electricity are liable to come into contact with the wire or wires, . . . and the arms or supports bearing live wires are especially designated and distinguished by a color or other designation which is instantly apparent, . . ."

The evidence is without serious dispute and in material substance tends to establish the following facts: Lot 14 in the village of Hamlet, Indiana, is owned by that village and across said lot, extending in an easterly and westerly direction, the appellant for many years has maintained electrical wires strung from a pole on the westerly part of said Lot 14 to a pole on the west curb of Starke Street, a north and south public highway, which forms the east end of the lot; the top strand of wires are three in number and carried an electrical voltage of 12,500; said top strand of wires were some 26 feet 6 inches above the ground and were not insulated with any kind of insulating material. Some ten feet below the top strand of wires was another three line strand of wires which carried a voltage of 220. The voltage of the lower strand of wires was insufficient, under ordinary circumstances, to cause death upon contact. The cross arms bearing said energized high voltage wires bore no distinguishing mark or color.

Lot 13 in said Town is privately owned and is contiguous to and north of said Lot 14. On said Lot 13 stands a one-story residence, the southwest corner of which is approximately 4 feet 6 inches from the com-

mon boundary line between said Lots 13 and 14, with a roof over-hanging approximately ten inches at a height of about 11 feet off the ground. The house had been situated on said Lot 13 for many years and long prior to the stringing by appellant of said electrical wires across said Lot 14. The house, at the time of the accident, was occupied by Ruth Bailey, daughter of the decedent, and her husband, Dennis Bailey.

None of appellant's wires passed over any part of said house or over said Lot 13. If the over-hanging eave of the house were projected up to an even height with the high voltage wires the eave at the southwest corner of the house would be, by horizontal measurement, approximately four feet north of the northernmost high voltage wire. As said wires are about 16 or 17 feet higher than the referred to overhanging eave, which is the nearest point of the house to the nearest wire, "the distance from the wire to the overhang itself would be 17½ feet."

The proper reception in Hamlet of television broadcasts necessitates antennas extending upward, variously from 30 to 50 feet. Within the four years prior to April 2, 1953, there had been erected in Hamlet "quite a number of television antennas with the normal antenna being between thirty and fifty feet". Of this fact appellant had knowledge.

On April 2, 1953, appellee's decedent and three assistants were engaged in the attempted erection of a television antenna at the west side of said house. The antenna consisted of two pieces of iron hollow pipe, referred to as well pipe, screwed or welded together so that its total length was about 40 feet, with an antenna extending across the top which was "two and a half to three feet wide from tip to tip." The design of the antenna and the manner or way in which it was attached to the pipe line is not disclosed by the evidence. The pipe

was of a diameter of one and one-quarter inches at the bottom and one inch at the top. The procedure adopted by the decedent and assistants in the attempt to erect the antenna appears to have been that the base or butt end of the pipe was placed on the ground "about three feet from the back of the house" and about 15 or 20 feet north of the wires, and the four men were so placed that by gripping the pipe with their hands and pushing upward as they walked toward the house the pipe would finally stand in erect position. It was while the men were engaged in this maneuver that the antenna, in some manner, not definitely explained, came in contact with the energized high voltage wires resulting in death by electrocution of three of the men, including appellee's decedent.

The evidence is uncontradicted that appellant's wires were maintained in accordance with and met the requirements of the National Electric Safety Code. It is shown that under the Code, wires placed 15 feet above the ground are not required to have any mechanical insulation upon them.

One of the specifications in appellant's motion for new trial was that the court erred in giving appellee's instruction No. 1 over appellant's objection. Said instruction, omitting therefrom the statute which has been heretofore set out, reads as follows:

"You are instructed that at all times complained of in the plaintiff's complaint there was a statute of the State of Indiana in full force and effect which provides as follows: (Here the statute is quoted in part). If you find from a fair proponderance of the evidence that the defendant failed to obey the provisions of said statute, it was guilty of negligence, unless you further find from a fair preponderance of the evidence that under circumstances shown in evidence which resulted from causes or things beyond the defendant's control and not produced by his own negligence, it was impossible for it to

comply with said statue, or excusable for it not to comply with said statute".

Appellant's objection to said instruction asserts that the statute is not applicable to the evidence in that the evidence shows that at the time of decedent's injury and resulting death, the decedent was not an employee of appellant and was not then a member of the general public engaged in the activities of a member of the general public, but was on private property not used by the general public, and that the high voltage line was 28 feet above the ground and not in a position where the general public would come in contact.

In construing the statute, our court, in *Jakob* v. *Gary Railways, Inc.* (1947), 118 Ind. App. 13, 70 N. E. 2d 753, (transfer denied), said that the word "public," as used in the statute, "means the general public — a great multitude of persons who would, in the course of daily events, be exposed to danger by the presence of an uninsulated wire carrying a dangerous voltage of electricity. . . . The exposure must be common to the concourse of people who make up the general public in any locality."

If the evidence in this case fails to show that the decedent, at the time of the accident, was then acting in the status of one of the general public, in the sense and within the meaning of the statute as construed by our court, then appellant's failure to comply with the provisions of the statute would not warrant an instruction to the jury that such violation thereof was negligence on the part of appellant. And this for the reason that under the statute such evidence would not disclose any duty to insulate the wires owing by appellant to decedent as one within the protection of the statute and, therefore, appellant's failure to comply with the provisions of the statute could not be properly charac-

terized as negligence and would not render it subject to liability by reason thereof.

It is clear from the evidence that decedent, at the time of the accident, was not on public ground nor in a place where the general public would have a legal right to be except with the consent of the owner of the lot. Any such occupancy of said lot or plat of ground by the people of the locality without the consent of the owner would amount to a trespass thereon by such persons. The evidence discloses that the house was occupied by decedent's daughter and her husband, the latter being one of the three killed in the accident, as their home. The pictures in evidence show the house to be of usual bungalow type of family dwelling. It is apparent from the record that the antenna was being erected by the decedent, his daughter's husband, Dennis Bailey, her brother James, and her cousin, Robert Porter, for the personal use and benefit of the decedent's daughter and her husband. Thus, it seems clear that decedent, at the time of the accident, was engaged in a private (as distinguished from public) project, for a private purpose, in a private place, wholly disassociated and apart from any public activity or public concourse.

At the time decedent came into contact with the energized wires he was, of course, a potential member of the public. In a broad sense, all the people of a community are members of the public. However, as above pointed out, our courts have interpreted the wording and meaning of the statute and have made clear exposition thereof. Applying the doctrine of the Jakob case, *supra,* to the situation made apparent by the evidence in the instant case, it seems clear that appellant's high voltage wires, being 26 feet off the ground and extending across a lot or plot of ground not shown to have been then in use by the gen-

eral public, did not constitute an ". . . exposure . . . common to the concourse of people who make up the general public. . . ".

As we understand appellee's position and contention, the stress of decisiveness is to be placed upon whether the decedent, at the time of the fatal occurence, was then a member of a class falling within the protection of the statute. However, we think that the stress of decisiveness, while not exclusive and absolute in all cases, is, of necessity, when considering the question of appellant's negligence, whether the uninsulated high voltage wires maintained by the defendant were in such place or position that they constituted a danger of injury common to the general flow of the people constituting the general public, that is, that they were at a point where the public was liable to come in contact therewith.

We are of the opinion that the statute, insofar as it pertained to the uninsulated wires maintained by appellant, had no application to the evidence adduced at the trial and that the giving of appellee's instruction No. 1 was prejudicial error.

In view of our conclusion, it is unnecessary to consider and pass upon any other errors presented by appellant. Further, as appellee, as before stated, has conceded in argument that if we find that the statute had no application to the evidence, a reversal must result, any consideration of the common law liability of appellant would be fruitless.

Judgment reversed, with instructions to sustain appellant's motion for a new trial and for further proceedings.

NOTE.—Reported in 139 N. E. 2d 558.