LOFTON CHRISTMAS *v.* JAMES CHRISTMAS.

[No. 1-273A24. Filed January 23, 1974. Rehearing denied February 20, 1974. Transfer denied May 3, 1974.]

*William J. Marshall,* of Princeton, *Richardson & Rusk Professional Corporation,* of Washington, for appellant.

*John R. Van Winkle, Charles Thompson, Henderson, Daily, Foxworthy & Van Winkle,* of Indianapolis, *Hayes & Dwyer,* of Washington, for appellee.

LOWDERMILK, J.—Plaintiff-appellant charges negligence on the part of defendant-appellee which resulted in injuries to the appellant from a fall which occurred on the snow covered side porch of appellee's residence in the night time.

Trial was had and at the close of plaintiff's evidence the defendant filed a motion for judgment on the evidence, which motion consisted of four specifications, namely: (1) No evidence was offered or received to prove a breach of duty owed to the plaintiff; (2) No evidence was offered or received to prove the defendant guilty of any negligence; (3) The evidence presented showed as a matter of law that the plaintiff was guilty of contributory negligence which was the cause of his injury, and (4) The evidence presented shows as a matter of law that the plaintiff incurred any and all risks and his claim is therefore barred.

The court sustained the motion and instructed the jury to return a verdict for the defendant, which was done. The

court then entered a judgment for the defendant. Appellant timely filed his motion to correct errors which was overruled by the court.

Appellant had a hobby of coon hunting and on the night of December 28, 1969, he, along with one Bill Clark, decided to go coon hunting. There was several inches of snow on the ground when they left home at approximately 7:30 in the evening. The two men drove southeast of Washington, Indiana, and hunted for about two hours. Thereafter they decided to go to the home of appellant's brother (appellee), which was ten to twelve miles away, to discuss a trade of dogs.

When appellant and Clark arrived at appellee's residence, about 10:00 P.M., it was dark. Appellee's wife turned on a kitchen light but no outside light was turned on to illuminate the porch. The most convenient entrance to the home was through the side porch, as there was no sidewalk or porch to the front door. Appellant and Clark went into the house and discussed various matters, including the trading of dogs, with appellee. A trade was made and appellant then, at appellee's request, voluntarily proceeded outside to the rear of the house to get the dog for which he had traded and to return him into the house. When appellant stepped onto the porch on his way out, his foot slipped, he did the splits, and claimed injury to his back.

The evidence presented by the plaintiff-appellant is that there was two to four inches of snow on the ground while appellant and his friend, Clark, were coon hunting; that as they drove to appellee's home it was icy and sleeting and continued to do so to the time they stopped in appellee's driveway, turned the lights off on the truck and went into his home.

While the men were sitting in appellee's home appellee went to the window and then made the remark, "It's asleeting out and raining. It's getting bad."

Appellant and Clark were both dressed warm for their

hunting trip and wore mine spot flashlights with a helmet and a battery so they could see.

The back porch to appellee's home was spongy and weak but had been covered with a plywood board, making it solid except that one's weight would depress the porch. The porch had an estimated ten to twelve inch rise from it to the kitchen floor.

Appellant had been into appellee's home at least twice a week on an average from 1967 until the night he injured his back and had always entered and left by way of the back porch and back door which he used when injured.

Appellant testified that on the night of the dog swap he did not remember seeing any snow on the porch when he went in but did see ice; he did not see any burlap bag or other cloth for wiping the feet on the porch when he went in and testified he did not see it when he went out to get the coon dog, but later turned on the electric light which he wore on his helmet to see and as he returned to the house he observed that he had stepped on the burlap bag as he went out of the house.

Among the errors charged to the court by appellant's motion to correct errors was specification 2 (D), in that the evidence failed to show that the plaintiff incurred any and all risks to which he was subjected.

The doctrine of incurred risk must be distinguished from contributory negligence and the courts in this State have consistently held that the two doctrines must remain exclusive. This court said, in the case of *Stallings, et al.* v. *Dick* (1965), 139 Ind. App. 118, 210 N.E.2d 82, as follows:

"The courts have long recognized the doctrine of incurred risk and have distinguished it from the separate defense of contributory negligence. . . . (Citations omitted.)" See, also, *Pierce* v. *Clemens* (1943), 113 Ind. App. 65, 46 N.E.2d 836.

It must be remembered that incurred risk is differentiated from assumed risk only to the extent that an assumed risk lies where there is a contractual relationship. 21 I.L.E. *Negligence,* § 93, p. 353.

The court, in *Stallings, supra,* defined the doctrine of incurred risk as follows:

"The doctrine of incurred risk is based upon the proposition that one incurs all the ordinary and usual risks of an act upon which he voluntarily enters, so long as those risks are known and understood by him, or could be readily discernible by a reasonable and prudent man under like or similar circumstances. (Citations omitted.)"

This court discussed incurred risk in the case of *Indiana, etc. Oil Co.* v. *O'Brien* (1903), 160 Ind. 266, 65 N.E. 918, 66 N.E. 742, as follows:

". . . it must appear that the injured person had knowledge of the danger in question and appreciated it, and voluntarily, or of his own choice, exposed himself to or encountered such danger, thereby incurring, or taking upon himself, the risk incident thereto. . . ."

It is our opinion that the evidence adduced at trial establishes as a matter of law that the plaintiff incurred the risk of his injuries. First, the evidence shows that appellant voluntarily entered into the course of action that resulted in his injury. The appellant went to the home of appellee on his own initiative, and entered said home on his own initiative. His exit from the kitchen to get the dog, while done at the request of appellee, was still a voluntary action on the part of appellant and was being done for his own gain.

Next, the risks involved in leaving the house and stepping onto the ice covered porch were known, or, in the exercise of reasonable care, should have been known, and understood by the appellant. Appellant testified that he had been visiting the home of appellee about twice a week for a period of at least three years. He further testified that the condition of the side porch had always been bad and that the condition of the

porch was the same on the night of the accident as it always was. The step on the porch was about twelve to fourteen inches in height and while this is a higher step than normal, the testimony of appellant establishes that he knew of that condition.

The porch was constructed badly, with a plywood top that had a springing action in it, which was known to appellant for the past three years, as he testified.

On the night in question the appellant had been out walking in the snow and ice for at least two hours and it cannot be seriously contended that he did not know of the dangerous condition which would result from an accumulation of snow and ice.

Appellant testified that he could not remember seeing snow on the porch when he entered the house, but he did notice that the porch was covered with ice. Mr. Clark testified that the night was dark, snow was on the ground, and that the porch was covered with snow when he and the appellant arrived at appellee's home.

Appellee commented on the worsening weather during the conversation in the kitchen. There is testimony that it was snowing or sleeting before the time that appellant stepped outside, which facts were known by appellant.

The evidence discloses that there was a rug or burlap bag on the porch. This rug, or bag, was lumpy and ice covered. Appellant testified that he did not remember seeing the bag on the way into the house, but noticed it when he came back with dog. He admitted that he must have stepped on the bag when he first entered the house.

We note that the definition in *Stallings, supra,* includes risks known by a person or "readily discernible by a reasonable and prudent man under like or similar circumstances." We can see no dispute to the inference that any reasonable man stepping from inside a house down upon a porch that he knows is in a dangerous condition as a result of an inordinately

high step, a springy base, and a covering of ice and snow, would incur the risk of injury.

Appellant contends that a person under the circumstances in this case would have no possible choice but to use the porch in question if that person goes into the house. Appellant argues that he should not be considered to incur the risk where he has no choice as to his place of entrance and exit. Again, turning to the definition in *Stallings, supra,* we note that a person incurs the risk when he acts in a voluntary manner to place himself in a dangerous position. It is our opinion that appellant made a voluntary choice to go into the house and in so doing incurred any risk involved in entering or leaving that house by an exit known to be dangerous. It must be remembered that another exit was available.

In *Pierce, supra,* this court stated the test to be followed in deciding whether the issue of incurred risk should be left to the jury:

". . . Where the evidence on the question of assumed or incurred risk presents an issue of fact, that issue is for the jury, but where there is no real dispute in the evidence bearing on that question, it is for the court to say as a matter of law that the plaintiff assumed or incurred that risk. . . ." See, also, *Stallings, et al.* v. *Dick, supra; Cornette* v. *Searjeant Metal Products* (1970), 147 Ind. App. 46, 258 N.E.2d 652.

For the above reasons, it is our opinion that the undisputed evidence adduced at trial establishes that appellant incurred the risk as a matter of law and no jury question was presented. It is axiomatic that the judgment of the trial court will be sustained when a legal theory and the evidence will support the decision.

Appellant has urged this court to decide whether he was a licensee or an invitee, and, alternatively, to abolish the distinction. Both parties have made well-reasoned legal arguments on these issues. However, we are not required to decide these issues under the facts of this case. The doctrine of incurred risk would apply here whether appellant was a

licensee or an invitee and his status would not change the law set out herein. *Kalicki* v. *Beacon Bowl, Inc.* (1968), 143 Ind. App. 132, 238 N.E.2d 673; *Standard Oil Co. of Ind.* v. *Henninger* (1935), 100 Ind. App. 674, 196 N.E. 706; *Clark, Admx.* v. *City of Huntington* (1920), 74 Ind. App. 437, 127 N.E. 301, 128 N.E. 453; *Standard Oil of Indiana* v. *Meissner* (1936), 102 Ind. App. 552, 200 N.E.2d 445.

Appellant complains that the decision of the court was not supported by sufficient evidence. However, we have hereinabove found that the evidence was sufficient to establish an incurred risk as a matter of law. Having so found, we need not decide the issue of (1) whether appellant established a prima facie case, (2) whether the evidence showed the appellee was negligent; or (3) whether there was a jury question as to alleged contributory negligence.

For the above stated reasons, it is our opinion that the trial court properly sustained appellee's motion for judgment on the evidence and properly instructed the jury to return a verdict for appellee.

Judgment affirmed.

Robertson, P.J. and Lybrook, J. concur.

NOTE.—Reported at 305 N.E.2d 893.