STEVEN A. PETROSKI AND *S*TEVEN PETROSKI *v.* NORTHERN INDIANA PUBLIC SERVICE COMPANY.

[No. 3-1274A201. Filed September 22, 1976. Rehearing denied February 9, 1977. Transfer denied May 10, 1977.]

*Michael C. Harris, Robert A. Welsh, Harris & Welsh,* of Chesterton, for appellants.

*George W. Douglas, James H. Douglas, Douglas, Douglas & Douglas,* of Valparaiso, for appellee.

STATON, P.J.—Fourteen year old Steven A. Petroski received severe injuries when he touched an electrical distribution line. The line was located in the upper branches of a tree which Steven and his playmates frequented. Steven brought an action against NIPSCO, the public utility which owned and maintained the line.[1] After Steven presented his evidence to the jury, NIPSCO moved for judgment on the evidence. This motion was granted.[2] Steven's appeal to this

1. Steven's father brought an action against NIPSCO for loss of his son's services. Steven and his father's actions were joined for jury trial. When we mention Steven's action in this opinion, the reference also includes his father's action.

2. The trial court entered judgment as follows:

". . . Defendant's motion for judgment at the close of the plaintiff's evidence is now sustained. The Court, after being duly advised in the premises finds that there is no evidence that defendant was negligent and further, that the evidence shows that the plaintiff was

Court raises the sole issue of whether the trial court erred when it granted NIPSCO's motion for judgment on the evidence.

In our review of the evidence and NIPSCO's motion for judgment on the evidence, we conclude that the trial court did err, and we reverse.

## I.

### Standard of Review

In our review of the trial court's judgment which granted NIPSCO's motion for judgment on the evidence, we will use the same standard as that used by the trial court when it granted the motion. This review is explained as follows in *Hendrickson & Sons Motor Co.* v. *Osha* (1975), 165 Ind. App. 185, 331 N.E.2d 743, 757:

> "Motions for judgment on the evidence (directed verdict) are governed by Ind. Rules of Procedure, Trial Rule 50. Pursuant to that rule, a defendant's motion for judgment on the evidence made at the close of the plaintiff's evidence or at the close of all the evidence should be granted only in the absence of evidence or reasonable inference on at least one essential element of the plaintiff's claim, *Miller* v. *Griesel* (1974), 261 Ind. 604, 308 N.E.2d 701; *Mamula* v. *Ford Motor Co.* (1971), 150 Ind. App. 179, 275 N.E.2d 849. The evidence must be without conflict and susceptible of but one inference, that being in favor of the moving party. In examining the evidence, the trial judge must draw all fair and rational inferences in favor of the party opposing the motion and give that party every favorable intendment of the evidence. *Jordanich* v. *Gerstbauer* (1972), 153 Ind. App. 416, 287 N.E.2d 784. The court may not substitute its judgment for that of the jury on questions of fact nor grant the motion because the evidence decidedly preponderates in favor of the moving party. *Smith* v. *Chesapeake and Ohio Railroad Co.* (1974), 160 Ind. App. 256, 311 N.E.2d 462; *Galbreath* v. *City of Logansport* (1972), 151 Ind. App. 291, 279 N.E.2d 578.
>
> "Appellate review of rulings on motions for judgment on the evidence is subject to the same standards which govern the trial court in ruling on the motion."

contributorily negligent and that he assumed the risk that incurred his damages. The Court accordingly enters judgment in favor of the defendant and against the plaintiff in each of these causes. . . ."

See also *Gregory* v. *White Truck & Equipment Co.*, (1975), 163 Ind. App. 240, 323 N.E.2d 280; *Smith* v. *Kinney* (1975), 167 Ind. App. 202, 338 N.E.2d 507; *Strong* v. *Commercial Carpet Co.* (1975), 163 Ind. App. 145, 322 N.E.2d 387; *Myers* v. *Maris* (1975), 164 Ind. App. 34, 326 N.E.2d 577.

## II.

### Evidence

The accident occurred in a tree adjacent to Haglund Road in the Town of Burns Harbor, Indiana. The evidence is conflicting as to whether at the time of the accident there were boards nailed to the tree serving as steps and whether there was a platform in the tree. There was testimony that children had been playing in the tree for more than five years prior to the accident and that the platform and steps had been in the tree for over three years. NIPSCO distribution lines ran through branches of the tree at approximately 17 feet above the ground. The line nearest to the ground did not carry an electrical charge, but approximately five feet above this line was a parallel line carrying 7200 volts. The two lines were identical in appearance. Neither wire was insulated. Each was covered with a green coating—a result of copper corrosion. Each line was accessible to children climbing in the tree.

On the date of the accident, October 6, 1970, Steven was fourteen years old. He was an eighth grade student. There was evidence that Steven made low grades in school and had a low average score on an IQ test administered to him when he was in the seventh grade.

As Steven and two other boys approached the tree, they discussed the touching of the lower wire. Steven told the boys that it was safe to touch the bottom wire and demonstrated by touching it. The evidence is conflicting as to whether Steven was dared to touch the upper wire. However, Steven did touch the upper wire and was severely injured.

Steven testified that prior to the accident a friend, Jim Marcum, demonstrated to him that it was safe to touch the lower wire. Jim Marcum had also told Steven that the top wire was safe to touch and that he had touched it before. Steven testified that he had heard that another boy had also touched both wires without injury.

There were no warning or danger signs in the tree. Six or seven years prior to Steven's accident another child was burned by a NIPSCO line in a tree approximately 1,000 feet west of the tree where Steven was injured. NIPSCO investigated this accident. There was testimony by a NIPSCO patrolman that he patrolled Haglund Road once or twice a year and more often if requested. He explained that his job was to report abnormal conditions that might present a safety hazard. However, distribution lines, such as those along Haglund Road, were not patrolled on a regular basis as were transmission lines. In addition to the patrolman's testimony, there was testimony that the steps and platform in the tree were visible from Haglund Road. The patrolman testified that he had made a report regarding the trees of Haglund Road, but he did not recall when he made the report.

## III.

### *Negligence*

Steven contends that he is entitled to a jury determination on the facts relating to the theories of negligence and strict liability. Indiana recognizes the following elements of negligence: (1) a duty; (2) failure to adopt the standard of care which is required by the duty; and (3) an injury resulting from breach of the standard of care.[3] *Miller* v. *Griesel* (1974), 261 Ind. 604, 308 N.E.2d 701, 706.

3. Both Mr. Petroski's suit for damages for loss of services and Steven's suit for damages for personal injuries require proof of the same elements. The only difference in the two suits is the measure of damages. It is not disputed that both Mr. Petroski and Steven presented some evidence of their respective damages. Since both Mr. Petroski and Steven were required to prove that NIPSCO owed Steven a duty, that NIPSCO breached that duty, and that the breach of duty by NIPSCO

The trial court specifically found that there was no evidence of negligence on the part of NIPSCO. It is not clear whether the trial court found that no duty was owed by NIPSCO to Steven or whether the trial court found that there was no evidence of breach of a duty. As pointed out in *Miller* v. *Griesel, supra,* and *Board of Comm'rs* v. *Briggs* (1975), 167 Ind. App. 96, 337 N.E.2d 852, the question of whether the law recognizes a duty flowing from the defendant to a particular plaintiff is a question of law for the trial court. Related to the question of duty is the question of what standard of care will be imposed upon the defendant once a duty is recognized. This is also a question of law. *Miller* v. *Griesel; Board of Comm'rs* v. *Briggs, supra.* If the trial court based its judgment on a finding that NIPSCO owed no duty to Steven, the judgment is erroneous.

## A. Common Law Duty

In Indiana, companies engaged in the generation and distribution of electricity have a duty to exercise reasonable care to keep distribution and transmission lines safely insulated in places where the general public may come into contact with them. *Harris* v. *Indiana General Service Co.* (1934), 206 Ind. 351, 189 N.E. 410; *Fort Wayne & Northern Ind. Traction Co.* v. *Stark* (1920), 74 Ind. App. 669, 127 N.E. 460.

NIPSCO argues that it owed no duty to Steven because he was not injured in a place used by the general public. In *Fort Wayne & Northern Ind. Traction Co.* v. *Stark, supra,* a nine year old child was severely injured while climbing a tree when he came in contact with a defectively insulated wire. In discussing the electric company's duty to the injured child, this Court quoted Curtis, LAW OF ELECTRICITY § 512 as follows:

resulted in Steven's injuries, we consider the two claims together on appeal.

"An electric company, maintaining a dangerous wire through or near a tree is bound to anticipate that persons may lawfully climb the tree, and it is required to exercise due care to prevent injury to such persons from its wire. * * * The courts recognize that children are apt to climb trees, and impose upon electric companies the burden of using due care to keep their high tension wires insulated in places where children when climbing a tree will come in contact with them." *Fort Wayne & Northern Ind. Traction Co.* v. *Stark, supra,* 74 Ind. App. at 672, 127 N.E. at 461.

In *Wise* v. *Southern Indiana Gas & Electric Co.* (1941), 109 Ind. App. 681, 34 N.E.2d 975, a mentally retarded sixteen year old boy was severely injured when he came into contact with a sagging, uninsulated electric wire while climbing on top of a bridge superstructure. This Court stated:

". . . [A] duty rests upon those who maintain high voltage wires, in places where they have reason to believe that lives of children will be imperiled by coming in contact therewith, to exercise reasonable care to guard such wires so as to prevent injury to them. . . ." *Wise* v. *Southern Indiana Gas & Electric Co., supra,* 109 Ind. App. at 692, 34 N.E.2d at 979.

In both *Wise* and *Fort Wayne & Northern Ind. Traction Co.,* it was argued that the child was a trespasser and that the only duty owed was the duty to refrain from willful injury.[4] In both cases, this argument was rejected. Even though electric lines may not be characterized as an attractive nuisance, Indiana case law recognizes that electricity is a dangerous force. Anyone utilizing this force owes a duty to exercise reasonable care to prevent injury to children who are likely to come in contact with it. *Fort Wayne & Northern Ind. Traction Co.* v. *Stark; Harris* v. *Indiana General Service Co., supra.* Regardless of whether Steven was a trespasser or licensee, NIPSCO owed Steven a

---

4. Indiana recognizes differing duties owed by owners and occupiers of land to trespassers, licensees, and invitees. See generally, *Note: Premises Liability: A Critical Survey of Indiana Law,* 7 IND. L. REV. 1001-47 (1974).

The record is not clear as to whether the tree involved in the accident was on a public right of way, an easement of NIPSCO's, or private property.

duty to exercise reasonable care to protect him from coming into contact with its high voltage wires.

We are not holding that companies engaged in the generation and distribution of electricity are insurers in every instance. Electric companies owe no duty to children to protect them from dangers that cannot be reasonably anticipated. *See Capitol Airways, Inc.* v. *Indianapolis Power & Light Co.* (1939), 215 Ind. 462, 18 N.E.2d 776. However, the tree involved here was not so difficult to climb nor located in such a remote area that NIPSCO could not have anticipated that children would climb it. There was sufficient evidence presented to raise a jury question as to whether NIPSCO should have anticipated the presence of children in the tree on Haglund Road. It is undisputed that children had been playing in the tree for over five years prior to the accident. The boards nailed to the tree and the platform in the tree were evidence that the tree was used for climbing. Finally, there was evidence that NIPSCO had previous notice that children played in the trees in this area, since it investigated a similar accident in a tree approximately 1,000 feet west of the tree involved here.

NIPSCO also argues that it owed no duty to Steven because he was over fourteen years of age. NIPSCO's argument seems to be that since Steven was *sui juris,* it owed no duty to Steven. It could not anticipate that he would climb the tree and come in contact with their distribution line. We do not agree that it was unforeseeable that a boy over the age of fourteen would climb the tree involved in this case. The question of whether a fourteen year old boy is chargeable with contributory negligence in touching an electric distribution line is a separate issue from the issue of duty.

NIPSCO had a common law duty to exercise reasonable care to keep its high voltage lines insulated in places where it had reason to believe that children would come into contact

with them.[5] Although some states require the exercise of utmost care by those using high voltage electricity,[6] the standard of care required in Indiana is "such care as a person of [reasonable] prudence would [ordinarily] use under like conditions and circumstances." *City of Decatur* v. *Eady* (1917), 186 Ind. 205, 216, 115 N.E. 577, 580.

### B. Statutory Duty.

At the time Steven was injured, Pub. L. No. 236, § 4, [1911] Ind. Acts 599 (repealed 1971) [(now see generally the Occupational Health and Safety Law of 1971, IC 1971, 22-8-1.1-1 (Burns Code Ed.)] provided in pertinent part as follows:

> "It is hereby made the duty of all owners . . . corporations, agents, or persons whatsoever, engaged . . . in the transmission, generation or use of any electricity or other power . . . to see and to require that all . . . wires . . . are carefully selected, inspected and tested, so as to detect and exclude defects and dangerous conditions, . . . and that in the transmission and use of electricity of a dangerous voltage full and complete insulation shall be provided at all points where the public or any employes of the owner, contractor, or subcontractor, transmitting or using said electricity, are liable to come into contact with the wire or wires. . . ."

Steven concedes that the word "public" in the above statute has been interpreted by this Court to mean "the general public—a great multitude of persons who would, in the course of daily events, be exposed to danger by the presence of an uninsulated wire carrying a dangerous voltage of electricity. . . . The exposure must be common to the concourse of people who make up the general public in any locality." *Jakob* v. *Gary Railways, Inc.* (1947), 118 Ind.

---

5. It is the majority rule in the United States that one who maintains a dangerous line carrying electricity through a tree owes a duty to children who are likely to come in contact with the wire to protect them from injury. *See, e.g., Blackwell* v. *Alabama Power Co.* (1963), 275 Ala. 123, 152 So.2d 670; *Bridges* v. *Arkansas-Missouri Power Co.* (Mo. App. 1966), 410 S.W.2d 106; 27 ALR2d 204; *but see Pape* v. *Monongahela Power Co.* (1969), 18 Ohio App.2d 91, 246 N.E.2d 910.

6. *Bridges* v. *Arkansas-Missouri Power Co.* (Mo. App. 1966), 410 S.W.2d 106.

App. 13, 16, 70 N.E.2d 753, 754. See also, *Northern Indiana Public Serv. Co. v. Howard* (1957), 127 Ind. App. 488, 139 N.E.2d 558. Nevertheless, Steven contends that it was for the jury to determine whether or not Steven came within the class of general public which the statute was enacted to protect.

NIPSCO, on the other hand, contends that the statute merely adopts common law safety standards and that it does not set standards of conduct for the determination of negligence. We must reject NIPSCO's contention that the portion of Pub. L. No. 236, § 4 [1911] Ind. Acts 599 concerning the transmission of electricity is simply declarative of the common law. This contention was specifically rejected in *Linn Grove Light & Power Co.* v. *Fennig* (1927), 86 Ind. App. 170, 154 N.E. 877 wherein this Court found that the statute was mandatory in form and required that in the transmission and use of electricity of a dangerous voltage, full and complete insulation must be provided at all points where the public is liable to come in contact with such lines. In determining whether violation of a safety statute establishes negligence *per se,* some consideration must be given to whether Steven is within the class of persons intended to be protected by the statute. *Dreibelbis* v. *Bennett* (1974), 162 Ind. App. 414, 319 N.E.2d 634; *Sheridan* v. *Siuda* (1971), 150 Ind. App. 395, 276 N.E.2d 883. Under the interpretation of "public" as used in Pub. L. No. 236, § 4 [1911] Ind. Acts 599 enunciated in *Jakob* v. *Gary Railways, Inc., supra,* we cannot conclude under these facts that Steven was a member of the class of persons intended to be protected by the statute. The great multitude of persons who make up the general public do not usually climb trees in the course of daily events nor is exposure to high voltage lines running through trees "common to the concourse of people who make up the general public. . . ." If statutory negligence had been the only theory of Steven's lawsuit the trial court might have correctly entered judgment on

the evidence.[7] However, since we have found that NIPSCO owed Steven a common law duty, we must now determine whether there was some evidence presented on the issues of breach of duty and proximate cause so as to render the trial court's judgment on the evidence erroneous.

### C. Breach of Duty and Proximate Cause

Breach of duty and proximate cause are questions usually determined by the trier of fact. *Elder* v. *Fisher* (1966), 247 Ind. 598, 217 N.E.2d 847; *Poe* v. *Tate* (1974), 161 Ind. App. 212, 315 N.E.2d 392; *Hammond v. Allegretti* (1974), 262 Ind. 82, 311 N.E.2d 821; *Dreibelbis* v. *Bennett* (1974), 162 Ind. App. 414, 319 N.E.2d 634. Only in cases where the facts are undisputed and lend themselves to a single inference or conclusion will questions of breach of duty and proximate cause become questions of law for the trial court. *Smith v. Chesapeake & Ohio Railroad Company* (1974), 160 Ind. App. 256, 311 N.E.2d 462.

Viewing the evidence most favorable to Steven, we find some evidence supporting his contention that NIPSCO breached its common law duty to protect him from injury. As previously pointed out, there was evidence that NIPSCO

---

7. Steven also argues that there was evidence of violation of the National Electrical Code as adopted by IC 22-11-11-2 (Burns Code Ed.) and that violation of the National Electrical Code would be negligence per se. IC 1971, 22-11-11-2 (Burns Code Ed.) provides:

"All electrical installations shall be in conformity with the laws of this state, and shall be in conformity with approved standards for safety to life and property. Conformity with regulations prescribed in the National Electrical Code as approved by American Standards Association, shall be prima facie evidence of conformity with approved standards for safety to life and property."

Assuming *arguendo* that the above statute creates some statutory duty to follow the National Safety Code, such statute is inapplicable to NIPSCO under the facts of this case. IC 1971, 22-11-11-2 is contained in Pub.L.No. 268, [1943] Ind. Acts 761. The title of this act is "An act to amend sections 4 and 8 of an act entitled 'An act to regulate and restrict the operation of moving picture shows, theatres, dance halls, night clubs, cabarets, assembly halls, and other places of public amusement and entertainment. . . .'" The title of an act gives notice of the general subject matter of the legislation. *Cf. Orbison* v. *Welsh* (1962), 242 Ind. 385, 393, 179 N.E.2d 727; 731; see IND. CONST. art. 4, § 19. Clearly IC 1971, 22-11-11-2 has no application to the case at bar.

knew or should have anticipated that children would be climbing in the tree on Haglund Road and might come in contact with the high voltage wire. We also find that there was some evidence presented which would support a reasonable inference that Steven's injuries were caused by NIPSCO's failure either to insulate the high voltage wire passing through the tree or to trim the tree so as to make the line inaccessible. The jury should have been allowed to determine whether NIPSCO breached its common law duty to Steven and whether the breach of that duty was the proximate cause of Steven's injuries.

## D. Contributory Negligence and Incurred Risk

The trial court specifically found that Steven was contributorily negligent and "assumed" (incurred) the risk.[8] This Court and the Supreme Court of Indiana have frequently distinguished the two doctrines. *Indiana Natural Gas & Oil Co.* v. *O'Brien* (1903), 160 Ind. 266, 65 N.E. 918; *Christmas v. Christmas* (1974), 159 Ind. App. 193, 305 N.E.2d 893; *Stallings* v. *Dick* (1965), 139 Ind. App. 118, 210 N.E.2d 82. The doctrine of incurred risk has been defined as follows:

> "The doctrine of incurred risk is based upon the proposition that one incurs all the ordinary and usual risks of an act upon which he voluntarily enters, so long as those risks are known and understood by him, or could be readily discernible by the reasonable and prudent man under like or similar circumstances. . . ." *Stallings* v. *Dick, supra,* 139 Ind. App. at 129, 210 N.E.2d at 88.[9]

8. Technically, assumed risk is a separate affirmative defense from incurred risk in Indiana. Assumed risk only arises when there is a contractual relationship between the parties, and it is not applicable to the case at issue. *Christmas* v. *Christmas* (1974), 159 Ind. App. 193, 305 N.E.2d 893; *Coleman* v. *DeMoss* (1969), 144 Ind. App. 408, 246 N.E.2d 483; *Stallings* v. *Dick* (1965), 139 Ind. App. 118, 210 N.E.2d 82.

9. The broad incurred risk defense enunciated in Indiana negligence cases, which rests in part on an objective reasonable man standard, may be inapplicable to Indiana strict liability cases. Nothing in this opinion should be interpreted as broadening the assumption of the risk (incurred risk) defense to strict liability actions discussed in *Gregory* v. *White Truck & Equipment Co.* (1975), 163 Ind. App. 240, 323 N.E.2d 280.

See also *Sullivan* v. *Baylor* (1975), 163 Ind. App. 600, 325 N.E.2d 475; 477; *Christmas* v. *Christmas, supra,* 305 N.E.2d at 895.

██ The Indiana courts have enunciated the following definition of contributory negligence:

" 'It is elementary that contributory negligence is the failure of a person to exercise for his own safety that degree of care and caution which an ordinary reasonable and prudent person in a similar situation would exercise. . . .' " *Memorial Hospital of South Bend, Inc.* v. *Scott* (1973), 261 Ind. 27, 37-8, 300 N.E.2d 50, 57 [citing *Isenberg* v. *Ortona Park Recreational Center, Inc.* (Fla. App. 1964), 160 So.2d 132, 134.]

See also *Jenkins* v. *City of Fort Wayne* (1965), 139 Ind. App. 1, 3-4, 210 N.E.2d 390, 392. The standard of care required to be exercised by a minor who is *sui juris* so that he may avoid being held contributorily negligent is such care as a child of like age, intelligence, and experience would ordinarily exercise under like circumstances. *Moore v. Rose-Hulman Institute of Technology* (1975), 165 Ind. App. 165, 331 N.E.2d 462; *Stewart* v. *Jeffries* (1974), 159 Ind. App. 693, 309 N.E.2d 433; *Hobby Shops, Inc.* v. *Drudy* (1974), 161 Ind. App. 699, 317 N.E.2d 473; *Indianapolis Railways, Inc.* v. *Williams* (1945), 115 Ind. App. 383, 59 N.E.2d 586.

There are factual situations when conduct may be characterized as either contributory negligence or incurred risk. For example, in those cases when the plaintiff voluntarily encounters a known *reasonable* risk exercising unusual care for his safety, there may be no contributory negligence on his part, but his conduct may still be characterized as incurral of the risk. However, in those cases where the plaintiff voluntarily encounters a known *unreasonable* risk which no reasonable and prudent person in a similar situation would encounter, his conduct could be described as either incurral of the risk or contributory negligence. See WILLIAM L. PROSSER, HANDBOOK OF THE LAW OF TORTS § 68, at 440-51 (4th ed. 1971).

It is not disputed that Steven voluntarily touched the wire. However, a reasonable and prudent fourteen year old boy would not knowingly touch an uninsulated high voltage electric line. If the evidence leads to the sole conclusion that Steven appreciated or should have appreciated the risk he was taking by touching the top line, his conduct could be characterized as either contributory negligence or an incurral of the risk. In this evidentiary posture, the trial court's entry of judgment on the evidence would have been proper. However, incurred risk and contributory negligence are generally questions of fact for the jury. If the evidence is conflicting or if reasonable persons could draw different inferences from the evidence, the trial court could not properly find contributory negligence or incurred risk as a mater of law. *McCall* v. *Sisson* (1975), 166 Ind. App. 403, 336 N.E.2d 660; *State* v. *Collier* (1975), 165 Ind. App. 239, 331 N.E.2d 784.

Steven voluntarily touched the upper uninsulated high voltage line. However, Steven testified that he did not think anything would happen when he touched it. He had touched the lower line, which was identical to the upper line, without injury. His friend, Jim Marcum, and another boy had supposedly touched the upper wire without incident. There were no warning signs in or near the tree. Steven admitted that he knew electricity was dangerous and that he thought the line might be an electric line. This evidence and the inferences to be drawn from it do not lead to the sole conclusion that Steven appreciated the risk he was taking by touching the upper wire. Steven testified as follows:

"Q. Steve, when you were up in the top of the tree there and you touched this wire, what did you think would happen to you?

"A. The same as what would happen when I touched the bottom line—nothing.

"Q. Why was that?

"A. Well, for one reason—Jim and me were pretty good friends. When he showed me the bottom wire was

okay and said the top one was okay, I believed him. After touching the bottom wire and seeing the top wire they looked exactly alike, I didn't think there was any danger at all."

The evidence does not support the sole conclusion that a child of like age, intelligence, and experience would not have touched the upper wire under the circumstances. There was evidence that at least two other children had touched the upper wire prior to Steven's accident. There was evidence that several children had previously touched the bottom wire and that one child "swang off of the lower wire one day like Tarzan."

NIPSCO directs this Court's attention to *Brush v. Public Service Co.* (1939), 106 Ind. App. 554, 21 N.E.2d 83; *Kent* v. *Interstate Public Service Co.* (1929), 97 Ind. App. 13, 168 N.E. 465. *Kent* involved a fourteen year old boy who was killed when he came in contact with an electric wire while climbing on a bridge superstructure. *Brush* involved a fourteen year old boy who was injured when he climbed onto a transformer platform. In both cases the child was held to be contributorily negligent as a matter of law, and this Court stated that the child involved must be charged as a matter of law with the consequences of his act as an adult. To the extent that those opinions can be read to indicate that the degree of care required of a fourteen year old boy to avoid being held to be contributorily negligent is the same degree of care required of an adult, they are hereby overruled. (See interpretation of *Kent* and *Brush* in *Indianapolis Railways, Inc.* v. *Williams* (1945), 115 Ind. App. 383, 59 N.E.2d 586.) The standard of care required to be exercised by a minor, who is *sui juris*, to avoid being held to be contributorily negligent is such care as a child of like age, intelligence, and experience would ordinarily exercise under like circumstances. *Moore* v. *Rose-Hulman Institute of Technology; Stewart v. Jeffries; Hobby Shops, Inc.* v. *Drudy; Indianapolis Railways, Inc.* v. *Williams, supra.*

There was evidence in *Kent* and *Brush* that children had previously played on the bridge superstructure and the factory roof adjacent to the transformer platform; however, this Court indicated that the places where the children were injured were not easily accessible and dangerous to reach. If the Court found contributory negligence as a matter of law in *Kent* and *Brush* because the only inference from the evidence was that no child of like age, intelligence, and experience would climb in such perilous places, these cases are easily distinguishable from the case at bar.

The evidence is undisputed that the tree on Haglund Road was easily accessible to children. The branches between the lower wire and the upper wire were heavy and would support "almost anybody except for maybe a 300 pound man. . . ." The jury should have been allowed to determine whether Steven incurred the risk of his injuries or whether he was contributorily negligent. The trial court's finding of contributory negligence and incurred risk as a matter of law was erroneous.

## IV.

### *Strict Liability*

Steven further contends that the doctrine of strict liability under the Restatement (Second) of Torts § 402A (1965) is applicable to the facts of his case and that he should have been allowed a jury determination of this theory. Specifically, Steven contends: (1) NIPSCO was a manufacturer of a product, electricity, which had been placed in the "stream of commerce"; (2) that the product was in a defective condition; and (3) that Steven was within the zone of foreseeable harm from such a defect. NIPSCO concedes that if it delivered dangerously high-voltage electricity to a home, § 402A might be applicable. However, NIPSCO argues that there must be delivery to the consumer or user before there can be § 402A strict liability.

Indiana case law has expressly recognized the doctrine of strict liability as set forth in § 402A. *Ayr-Way Stores, Inc.* v. *Chitwood* (1973), 261 Ind. 86, 300 N.E.2d 335; *Cornette* v. *Searjeant Metal Products, Inc.* (1970), 147 Ind. App. 46, 258 N.E.2d 652; *Perfection Paint & Color Co.* v. *Konduris* (1970), 147 Ind. App. 106, 258 N.E.2d 681. § 402 reads as follows:

"§ 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer

"(1)   One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a)   the seller is engaged in the business of selling such a product, and

(b)   it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2)   The rule stated in Subsection (1) applies although

(a)   the seller has exercised all possible care in the preparation and sale of his product, and

(b)   the user or consumer has not brought the product from or entered into any contractual relation with the seller."

Electricity is a product which can be sold within the meaning of § 402A. *Cf. Helvey* v. *Wabash County REMC* (1972), 151 Ind. App. 176, 278 N.E.2d 608. Furthermore, a literal "sale" of goods is not necessary for application of § 402A. As this Court stated in *Link* v. *Sun Oil Co.* (1974), 160 Ind. App. 310, 312 N.E.2d 126, the test is not whether there has been a technical sale but rather whether the product has been placed in the stream of commerce. Technically, until the electricity reaches its destination in a home or factory, it is transmitted by equipment over lines under the exclusive control of NIPSCO. The electric company's transmission and distribution lines are not a part of the end product which reaches the consumer as in the case of bottles and cans which are a part of the finished product. Since NIPSCO had not yet

placed its product in the stream of commerce, a judgment on the evidence on the issue of strict liability is proper in the case at bar.

Since the trial court improperly granted judgment on the evidence as to Steven's negligence action, the judgment of the trial court is hereby reversed with instructions to grant a new trial in Steven's negligence action and his father's loss of services action.

Garrard, J., concurs with opinion; Robertson, C.J., (by designation) concurs.

### CONCURRING OPINION

GARRARD, J.—While I concur in the result reached by Judge Staton, I feel it necessary to separately state my reasons.

The initial question is whether NIPSCO owed a duty of care. It did, due to its transmission of electricity of dangerous voltage. *Ft. Wayne & Northern Ind. Traction Co.* v. *Stark* (1920), 74 Ind. App. 669, 127 N.E. 460. This same duty is that prescribed by statute. IC 1971, 22-8-1.1-1.

It is a duty owed to the general public where they are likely to come into contact with the transmission wires. The point of *Jakob* v. *Gary Railways, Inc.* (1947), 118 Ind. App. 13, 70 N.E. 2d 753, and *NIPSCO* v. *Howard* (1957), 127 Ind. App. 488, 139 N.E. 2d 558, is that where the facts disclose no more than a private purpose, as opposed to one common to the public, it cannot be said that the duty was violated. *See, Miller v. Griesel* (1974), 261 Ind. 604, 308 N.E. 2d 701.

However, *Jakob* should not be read as requiring that all members of the public must regularly be exposed to danger before a duty exists. Rather, it is sufficient that members of the public are exposed to danger in doing what they may be anticipated to do at a point or in a location where they may be expected to do it. Thus, it appears to me that the point of the common law duty recognized in *Stark, supra,* is that it extends to wires passing through trees where the power company has reasonable grounds to anticipate public contact

by children because children are commonly known to climb trees.

In the present case, it is well to recall that if the duty existed at the point where Petroski came in contact with the wire, its breach is undisputed since the wire was not insulated and no other warning was given of its dangerous character.

The question thus becomes whether the duty extended to the wires passing through the particular tree in the manner testified to. Was this a place of potential public contact? Stated differently, was the evidence introduced by the plaintiff sufficient as a matter of law to enable the jury to decide that NIPSCO breached its duty by providing an uninsulated wire through the tree in question?

In *Stark,* the court answered this question affirmatively where the evidence showed the tree, which was small, was located at a place where numerous children were in the habit of congregating and playing. The evidence in the present case would support a finding that the tree in question was not only in such a location, but that children playing in the area had been in the habit of climbing it for a number of years. Thus, this question should have gone to the jury.

With respect to the questions of whether Petroski was guilty of contributory negligence or incurring the risk, I agree that while the jury might have so found, he was not barred as a matter of law.

Judge Staton correctly observes that the standard of reasonable care applicable to a minor is reasonable care for a child of like age, intelligence and experience under the same or similar circumstances.

Had the evidence shown no more than climbing the tree and the voluntary contact with the "hot" wire, I would have no difficulty in sustaining the trial court's determination. There, however, was evidence that Petroski had been shown the lower wire was safe and expressly told by a friend that the top wire was also safe.

The jury might not credit some of this testimony. They might conclude that Petroski was negligent in any event. However, I am unable to conclude that no reasonable fourteen year old boy would ever voluntarily touch such a wire when there were no warnings of danger; when he was expressly told by a trusted friend that *both* wires were safe; and when it was demonstrated to him that, in fact, the lower wire was safe.

Finally, I agree that strict liability as stated in § 402A of the Restatement of Torts (2nd) and adopted in Indiana does not provide a ground for plaintiff's recovery in this case.

I therefore concur in reversing the directed verdict upon the claim of negligence and remanding for a new trial.

NOTE.—Reported at 354 N.E. 736.