Everett HUNDT Plaintiff-Appellant,

v.

LaCROSSE GRAIN CO., INC.
Defendant-Appellee.

No. 3–1278A317.

Court of Appeals of Indiana,
Fourth District.

Sept. 21, 1981.

Harris & Welsh, Michael C. Harris, Chesterton, for plaintiff-appellant.

Newby, Lewis, Kaminski & Jones, Leon R. Kaminski and Mark L. Phillips, La Porte, for defendant-appellee.

MILLER, Judge.

This appeal is from a negligence action brought by appellant and cross-appellee Everett Hundt against the LaCrosse Grain Co., Inc., appellee and cross-appellant, following a fall by Hundt down a flight of stairs on property owned by LaCrosse. Hundt had been employed by LaCrosse for a number of years through an oral agreement to exterminate pests from various buildings located near the company's grain elevator in LaCrosse, Indiana. The jury found for Hundt and awarded $25,000 damages. However, the trial court set aside the verdict after determining it had erred in permitting testimony outside the scope of a pre-trial order, and this appeal by Hundt followed. Since we conclude the evidence in question pertaining to state building rules and regulations was not outside the ambit of the relevant pre-trial order, and since we also determine various other errors alleged by LaCrosse involving issues of contributory negligence and incurred risk as a matter of law are without merit, we reverse the trial court's decision granting a new

trial. We also conclude, however, that a new trial is required on the sole issue of damages, since the trial court committed reversible error by giving an instruction on future medical expenses which was not supported by the evidence.

We initially relate the facts upon which Hundt based his claim for damages. One morning in March 1976, Hundt and his son Brad visited the LaCrosse Grain Company for the purpose of applying bird exterminating substances to the rafters of a storage shed on the premises pursuant to their agreement with LaCrosse. When the two arrived, they first went into a small building where the company had an office (and where the misadventure later occurred) and made their presence known to the company's manager, Jim Anderson. They entered the office through the front door, as they always had done in the past. After a few minutes, the Hundts left the building and proceeded to the storage shed located about 180 yards to the rear of the office. The evidence also revealed it was the first time the Hundts had done bird exterminating work on the premises, although the elder Hundt had visited the LaCrosse buildings approximately once a month since 1955 for the purpose of exterminating various other pests. Hundt stated the LaCrosse facility was one of 127 grain elevators (along with various restaurants, farms, stores, and taverns) where he regularly did exterminating.

The particular work they were doing that day required the use of highly toxic chemicals, and after one and one-half to two hours of working with the substance, when the job was complete, Hundt and his son returned to the office building to wash up. This time, however, they entered through the back door of the office building, which was the closest door to the shed where they had been working. Hundt's fall occurred in the building housing the company's office. In this regard, he stated he opened the back door of the building, walked forward a few feet, and then mistakenly opened the door to the basement instead of the washroom door, and his momentum from these actions caused him to fall down the basement stairs. Significantly, the uncontradicted evidence was that the basement door opened inward, there was no landing inside the door, and there was no handrail or other bracive device alongside the stairs.

At the trial, Hundt testified he did not remember falling, nor did he recall what direction he was looking when he opened the door, although his son, walking a few steps behind Hundt, testified he fell in "one continuous movement" because "[n]aturally he had to step into the door" to open it. A diagram of the office building introduced into evidence revealed two washrooms were in a hallway to the left of the door which Hundt entered, and photographs showed these were identified by signs over the doors stating "Ladies" and "Gentlemen," with the latter door being furthest from the rear entrance to the building. No sign was present on or over the door leading to the basement. In addition, there also was evidence, in the form of further testimony by Hundt, that when the rear door of the building is opened inwards, one's view of the washroom hallway is somewhat obscured because the door itself tends to block off the hallway. On cross-examination, Hundt admitted he knew where both the washroom and the basement were located and in fact had been in each of these areas perhaps 100 times in the approximately 20 years he had visited the LaCrosse buildings. He also acknowledged he was familiar with the fact the basement door opened inward and that the stairway had no landing or handrails. As noted above, however, he further testified he had never entered the building from the rear door, and in this regard, he acknowledged that if he had approached from the front of the building he would have known which door led to the basement.

Following the presentation of Hundt's case, LaCrosse filed a motion for judgment on the evidence, contending 1) Hundt was not entitled to recover because at the time of the injury he was a licensee as a matter of law to whom LaCrosse had breached no duty; 2) Hundt was guilty of contributory negligence as a matter of law; and 3) Hundt incurred the risk as a matter of law.

The trial court rejected these motions and, as noted above, there was a verdict for Hundt, which ultimately was set aside when the trial court granted in part a Motion to Correct Errors filed by LaCrosse and ordered a new trial.

## I.

## EVIDENCE ADMITTED WHICH WAS ALLEGEDLY OUTSIDE SCOPE OF PRE–TRIAL ORDER

Although both parties have appealed to this Court, we first consider Hundt's contention the trial court erred in ordering a new trial. In this regard, the trial court held "[t]he Motion to Correct Errors is sustained and new trial ordered" because "[t]he Court believes it committed error in allowing the Fire Marshall [sic] to testify outside the scope of the pre-trial order and in the admission of evidence incidental to his testimony." Hundt contends, by contrast, that the relevant testimony concerning safety regulations was not outside the scope of the pre-trial order, and with this contention we agree.

Because of its significance to this issue, we first set out the relevant portions of the court's pre-trial order. That order, entered pursuant to Ind. Rules of Procedure, Trial Rule 16(J) [1], stated in part as follows:

"D. CONTENTIONS OF THE PLAINTIFF:

The plaintiff's contentions are that plaintiff's injuries were caused by the negligent acts and omissions on the part of the defendant which breached a duty of care which he owed to the plaintiff and that the plaintiff's injuries were a foreseeable result of said breach of duty and care. Said negligence consisted specifically of the defendant maintaining on its premises a dangerous condition con-

sisting of a basement door which swings into the basement opening over a set of stairs going into the basement which does not have a landing at the top of the stairs so that the plaintiff could open the door, walk onto the landing and proceed down the stairs to the basement.

Further, that the stairs to the basement had no hand rail or other bracing device which the plaintiff could use to catch himself or prevent his fall once having stepped into the doorway opening to the basement.

E. CONTENTIONS OF THE DEFENDANT:

The defendant generally denies the allegations of the plaintiff's complaint and further asserts that it was not guilty of any of the negligence as alleged.

The defendant further alleges that at the time the incident occurred, the plaintiff was a licensee and on defendant's premises for the convenience, curiosity or entertainment of the plaintiff and that the defendant therefore owes no duty to the plaintiff other than to refrain from willful, wanton misconduct.

The defendant further alleges that the plaintiff was guilty of contributory negligence and that the plaintiff incurred the risk of his injuries.

. . . . .

K. WITNESSES OF PLAINTIFF:

. . . . .

14. Representative of Indiana Administrative Building Council."

■ As our courts have previously held, a pre-trial order such as that involved here delineating the issues of the case supplants the allegations raised in the pleadings and controls all subsequent proceedings in the case. *City of Hammond, Lake County v.*

1. Subsection (J) of that Rule provides:

"(J) Pre-trial order. The court shall make an order which recites the action taken at the conference, the amendments allowed to the pleading, and the agreements made by the parties as to any of the matters considered which limit the issues for trial to those not disposed of by admissions or agreement of counsel, and such order when entered shall

control the subsequent course of action, unless modified thereafter to prevent manifest injustice. The court in its discretion may establish by rule a pre-trial calendar on which actions may be placed for consideration as above provided, and may either confine the calendar to jury actions or non-jury actions or extend it to all actions."

*Drangmeister,* (1977) 173 Ind.App. 476, 364 N.E.2d 157. The issues become those found by the trial court's pre-trial order, and not the issues raised by allegations in the pleadings.

In the instant case, where Hundt contends the pre-trial order did not require the exclusion of relevant safety regulations, the question for our review is whether the trial court erred in granting a new trial based on the improper admission of such evidence. The sole duty of this Court where a new trial is granted is to examine the record to determine if (1) the trial court abused its judicial discretion; (2) a flagrant injustice has been done the appellant; or (3) a very strong case for relief from the trial court's ordering a new trial has been made by the appellant, here Hundt. *Nissen Trampoline Co. v. Terre Haute First National Bank,* (1976) 265 Ind. 457, 358 N.E.2d 974; *Griffith v. Mathew,* (1967) 141 Ind. App. 462, 229 N.E.2d 657, *citing Bailey v.*

2. The portions of the regulations which were read as pertaining to a building constructed in 1954 stated as follows:

"CHAPTER 33–STAIRS AND EXITS

. . . . .

General Requirements

SEC. 3301. All exits as required for buildings in these Rules and Regulations shall comply with the requirements specified in this chapter for a stairway, ramp or smoke proof tower. Wherever stairways are mentioned, ramps may be substituted when constructed as specified in Section 3310. . . .

. . . . .

Doors

SEC. 3304. Doors shall not open immediately on a flight of stairs but on a landing at least equal to the width of the door.

. . . . .

Railings

SEC. 3305. All stairways shall have walls or well secured balustrades or guards on each side and handrails shall be places on at least one side of every stairway and stairways exceeding forty-four inches (44″) in width shall have handrails placed on each side. Stairways over seven feet (7′) wide shall be provided with one or more continuous intermediate handrails substantially supported and the number and position of intermediate handrails shall be such that there is not more than sixty-six inches (66″) between adjacent handrails.

. . . . ."

*Kain,* (1964) 135 Ind.App. 657, 192 N.E.2d 486.

The evidence which the trial court found to be outside the pre-trial order may be summarized as follows: During Hundt's case in chief, he called as a witness one William C. Goodwin, identified as a State Fire Marshal and member of the Administrative Building Council. Over objections by LaCrosse, Goodwin testified regarding construction regulations promulgated by the Council pertaining to buildings erected in 1954, which was the year the LaCrosse building was constructed, along with additional regulations which were in effect on March 9, 1976, when the accident occurred. In particular, Goodwin was permitted to read from those regulations certain sections which on their face purported to require the presence of a landing where a door opens immediately onto a flight of stairs, and which also required stairway handrails or similar safety devices.[2]

I RULES AND REGULATIONS OF THE STATE OF INDIANA 264–268 (1947).

The portions of the state fire marshal's regulations which were read as pertaining to a building in use in 1976 stated as follows:

"(22–11–5–2)–Fl. [(Burns Code Ed. 1976)] Purpose.—The purpose of these rules and regulations [Rules (22–11–5–2)–Fl—(22–11–5–2)–F91] is to provide a degree of public safety from fire which care be reasonably required. It is an endeavor to avoid requirements which might involve unreasonable hardship or unnecessary inconvenience or interference with the normal use and occupancy of a building, but insists upon compliance with a minimum standard for fire safety necessary in the public interest, even though a financial hardship may be involved in some individual cases.

. . . . .

(22–11–5–2)–F31. [Burns Code Ed. 1976] Definitions.—

. . . . .

Exit is a continuous and unobstructed means of egress to a public way, and shall include intervening doors, doorways, corridors, exterior exit balconies, ramps, stairways, smokeproof enclosures, horizontal exists, exit passageways, exit courts, and yards.

. . . . .

(22–11–5–2)–F37 [(Burns Code Ed. 1976)] Stairways.—(a) General. Every stairway serving any building or portion thereof shall conform to the requirements of this section.

. . . . .

Although we believe the proper procedure would have been for the trial court to take judicial notice of appropriate safety regulations pursuant to IND. CODE 4–22–2–11 and to instruct the jury accordingly[3] rather than permitting a witness to read the same to the jury, LaCrosse did not interpose such an objection to this apparently harmless error at trial.[4] Instead, it raises for our central consideration the contention that rules of this nature may not be relied upon at trial where they are not alluded to in a pre-trial order setting forth the "specific" averments of the defendant's negligence. In support of this position, LaCrosse argues that in relying on these safety regulations, Hundt attempted to change the theory of his case in midstream from mere negligence to negligence per se. By contrast, Hundt maintains in response that the general allegations of negligence found in the pre-trial order would not prevent his use of applicable safety regulations, and that in any event the regulations in question were not utilized at trial to demonstrate negligence per se, but were employed merely to establish *some evidence* of a breach of duty by LaCrosse.

Without question, we agree with the general proposition asserted by LaCrosse and as expressed by our Supreme Court to the effect that "[w]hen a pre-trial order specifies the issues of the case, the parties will not be permitted to go into other issues, unless the pre-trial order is amended," since "[t]he express purpose of Trial Rule 16 . . . is to provide for a pre-trial conference in which to simplify the issues raised by the pleadings and to define these issues within a pre-trial order." *North Miami Consolidated School District v. State ex rel. Manchester Community Schools*, (1973) 261 Ind. 17, 20, 300 N.E.2d 59, 62. In this respect, the rule is analogous to Rule 16 of the Federal Rules of Civil Procedure, on which it was based. *See* Civil Code Study Commission Comments, 2 Harvey, Indiana Practice 170–75 (1970). It has properly been observed with respect to Federal Rule 16, that a pre-trial conference, "[p]arties are expected to disclose all legal and fact issues which they intend to raise at trial, save only such issues as may involve privilege or impeaching matter," and that where they do not, they may be prohibited from intro-

(f) Landings. Every landing shall have a dimension measured in the direction of travel equal to the width of the stairway. Such dimension need not exceed 4 feet when the stair has a straight run. Landings, when provided, shall not be reduced in width by more than 3½ inches by a door when fully open.

Exception—Stairs serving an unoccupied roof are exempt from these provisions.

. . . . .

(i) Handrails. Stairways shall have handrails on each side, and every stairway required to be more than 88 inches in width shall be provided with not less than one intermediate handrail for each 88 inches of required width. Intermediate handrails shall be spaced approximately equal within the entire width of the stairway.

Handrails shall be placed not less than 30 inches nor more than 34 inches above the nosing of treads. They shall be continuous the full length of the stairs and except for private stairways at least one handrail shall extend not less than 6 inches beyond the top and bottom risers and ends shall be returned or shall terminate in newel posts or safety terminals.

Exceptions.—1. Stairways 44 inches or less in width and stairways serving one indi-

vidual dwelling unit in group H or I occupancies may have one handrail, except that such stairways open on one or both sides shall have handrails provided on the open side or sides.

2. Stairways having less than four [4] risers need not have handrails.

Handrails projecting from a wall shall have a space of not less than 1½ inches between the wall and the handrail."

3. We note such an instruction was given in the instant case.

4. By contrast, LaCrosse contends merely that it was a violation of the "best evidence rule" to read from a regulation not offered or introduced into evidence, an objection that is without merit in light of the fact appropriate regulations are properly made the subject of judicial notice pursuant to IC 4–22–2–11, *supra*. For the same reason, we similarly cannot agree with LaCrosse's contention that the regulations in question should have been listed as exhibits in the trial court's pre-trial order, and that Goodwin should have been properly qualified as an "expert" before he was permitted to testify regarding the regulations.

ducing new theories during the course of litigation. *Id.* at 172, *quoting Burton v. Weyerhaeuser Timber Co.,* (D.C.Or.1941) 1 F.R.D. 571 (where plaintiff-employee claimed to have been injured by one type of acid through the negligence of defendant-employer, the latter could not wait until trial to assert its defense that in fact plaintiff had been injured by another type of acid).

It is also evident, however, that the machinery of pre-trial procedure, whether under our own Rule or in the federal practice, has not been intended to revive the outmoded institution of "code" pleading. To this end, we are in agreement with the principle expressed in 62 Am.Jur.2d *Pretrial Conference* § 29 at 661 (1972) that

"[a] pretrial order should be liberally construed to embrace *all the legal and factual theories inherent in the issues defined therein.* Any other construction of the order would tend to unduly constrict the trial of the case and defeat the central and salutary purpose of the rule on pretrial, which is to insure the trial of every lawsuit on its merits." (Emphasis added.)

*See Century Refining Co. v. Hall,* (10th Cir. 1963) 316 F.2d 15 and *Peter Pan Seafoods, Inc. v. United States,* (D.Wash.1967) 272 F.Supp. 888, *rev'd on other grounds* (9th Cir. 1969) 417 F.2d 670.

Thus, in *Dominguez v. Gallmeyer,* (1980) Ind.App., 402 N.E.2d 1295, this Court had occasion to construe a broad pre-trial order so as to determine the "legal and factual theories inherent in the issues" surrounding a negligence action. In that case, an injured automobile passenger filed a negligence action against the driver of another car which had rear-ended the vehicle being operated by the plaintiff's son. The son was driving his mother to work, after which he intended to pick up his father at the hospital. In his pleadings, the defendant raised the issue of joint enterprise as it relates to the imputation of contributory negligence, but in the parties' pre-trial order, the question of contributory negligence and its imputation were more broadly stated:

"The contested issues of fact are the negligence, if any, of defendant, the contributory negligence, if any, of the driver of plaintiff Ophelia Dominguez's vehicle, [and] whether this contributory negligence, if any, can be imputed to plaintiff, Ophelia Dominguez under the facts and circumstances then and there existing...."

At the trial, the defendant sought to impute contributory negligence by a theory of agency rather than joint enterprise, and the pre-trial order was amended. On appeal, however, the plaintiffs objected to such amendment, contending that any reliance on a theory of agency was improper since it was neither pled nor included in the original pre-trial order. This Court responded by concluding not only that it was within the trial court's discretion to *amend* its order, but also that

"[t]he questions of the imputation of contributory negligence through an agency relationship was well within the scope of the [original] pre-trial order. The order merely set forth this issue in general terms. It did not limit the jury's consideration to only one theory of imputation of contributory negligence."

*Id.* at 1299. The Court further noted that "[o]bviously, the Dominguezes were aware that the imputation of contributory negligence was one of the contested issues of fact," and thus there was no reason to restrict the defendants to one legal theory in proving their defense, since "[c]ontributory negligence may be imputed by an agency theory as well as by a joint enterprise theory." *Id.* at 1298.

■■■ Without here having to decide whether violation of the proffered safety regulations would constitute negligence per se in the case at bar, we similarly conclude that in proving his allegations, Hundt was entitled to rely on any applicable regulations, since the relevant pre-trial order, as in *Dominguez,* "did not limit the jury's consideration to only one theory." As we earlier observed, the pre-trial order in the instant litigation stated merely that Hundt's injuries were caused by the "negligent" acts

or omissions of LaCrosse, and that the particular condition complained of was that LaCrosse maintained on its premises a door which opened out over a stairway with no landing and no handrail.[5] It is apparent, of course, that in the case at bar, as in any negligence action, the negligence alleged may arise from a breach either of a common law duty or one imposed by statute or regulation, since the conduct required of a "reasonable man" may be prescribed by legislative enactment. W. Prosser, the Law of Torts at 190 (4th ed. 1964). Accordingly, Hundt, like the defendant in *Dominguez*, was entitled to rely on either of the two theories (or both) in his efforts to show the negligence of LaCrosse. While it is true, as LaCrosse maintains, that the pre-trial order in question purported to "specifically" describe the *condition* giving rise to this lawsuit, it did not by any language restrict Hundt to a particular legal theory in demonstrating why such condition constituted negligence. *Dominguez v. Gallmeyer, supra.* See also in this regard *Ayr-Way Stores, Inc. v. Chitwood*, (1973) 261 Ind. 86, 90, 300 N.E.2d 335, 338, where our Supreme Court observed, in concluding a plaintiff was entitled to recover under a *complaint* amended pursuant to Ind.Rules of Procedure, Trial Rule 15, that:

> "[m]oreover, in the instant case, Chitwood sufficiently pleaded facts in his

*original* complaint which should have put defendants on notice as to the evidence to be presented at trial. The amendments did not alter the factual theory of plaintiff's claim for relief. In his original complaint, Chitwood alleged that Rugg manufactured a defective lawnmower, that his father purchased the lawnmower from Ayr-Way, and that the defect caused the lawnmower to malfunction resulting in his injuries. *It is cogently clear that more than one legal theory supports recovery under these facts.*" (Emphasis added.)

In addition, in the case at bar, the order did recite, as noted above, that among Hundt's witnesses would be a representative of the Administrative Building Council, the body which adopted the 1954 regulations relied on by Hundt.

We conclude, by consequence, that Hundt has presented a very strong case for relief from the trial court's ruling, based on an alleged violation of the pre-trial order, granting a new trial. In this regard, we note that LaCrosse has not presented any argument on appeal that the regulations in question were inapplicable to the facts of the instant case, nor did the trial court so find when it concluded merely that the evidence in question was outside the pre-trial order.[6] In the absence of any cogent argu-

---

5. While it is not expressly contended it was negligent to have *constructed* such a stairway in 1954 when the building was erected, we believe the order fairly conveys that it was the existence of such a stairway, and not merely the manner in which it was maintained, which constituted a breach of the duty owed to Hundt by LaCrosse. We note, in this regard, that other courts have held "[i]f a pre-trial order states the issue in the case in broad and vague terms, it is appropriate for the trial judge to go to the pleadings to determine what the parties are litigating about." 62 Am.Jur.2d *Pretrial Conference* § 35 at 668 (1972), *citing Balon v. Hotel & Restaurant Supplies, Inc.*, (1967) 6 Ariz.App. 481, 433 P.2d 661, *vacated on other grounds* (1968) 103 Ariz. 474, 445 P.2d 833. In the instant case, Hundt's complaint alleged, *inter alia*, "[t]he basement entry way was *constructed* in such a manner that the same wholly lacked a landing area at the top of the basement steps." (Emphasis added.)

6. We find no merit in LaCrosse's argument, which cites no authorities, that Hundt has "waived" his right to appeal by "failing to raise and address the issue of admission of evidence incidental to the testimony of the Fire Marshall [sic]." As LaCrosse points out, the trial court concluded in its ruling it had "committed error in allowing the Fire Marshal to testify outside the scope of the pre-trial order and the admission of evidence incidental to his testimony." We believe, however, the trial court was merely being redundant in its reference to any "incidental" evidence, since the record reveals the Fire Marshal's testimony related solely to the safety regulations discussed *supra*, and that no "incidental" evidence was in fact admitted. Assuming *arguendo*, however, the trial court's ruling was a response to LaCrosse's argument, as LaCrosse now contends, that it was error to read from a regulation which has not been admitted into evidence, we conclude any such error would be harmless. As we noted earlier, the proper procedure, in any event, would be to

ment to the contrary, therefore, we believe Hundt was entitled to rely on the safety regulations at the trial.

## II.

### ISSUES RAISED ON CROSS-APPEAL

Having thus concluded the trial court was not warranted in granting LaCrosse a new trial for the reasons it expressly stated, we proceed to consider, on LaCrosse's cross-appeal, the additional arguments preserved by its original Motion to Correct Errors which would support the granting of a new trial or a judgment for LaCrosse. *See Wong v. Tabor*, (1981) Ind.App., 422 N.E.2d 1279, *citing P—M Gas & Wash Co., Inc. v. Smith*, (1978) 268 Ind. 297, 375 N.E.2d 592.

*Motion for Continuance*

The first of the questions which LaCrosse asserts "has also been properly raised by the defendant on its cross-appeal and should be decided by the Court of Appeals" is that the trial court committed reversible error by denying a motion for continuance filed by LaCrosse when Hundt attempted to rely on the safety regulations quoted *supra*.

As our Appellate Courts have frequently had occasion to observe, "the granting or denying of a continuance is within the discretion of the trial court and this Court will review that discretion only to ascertain whether there has been an abuse. *Chambers v. Public Service Co. of Indiana, Inc.*, (1976) 265 Ind. 336, 355 N.E.2d 781. In the absence of clear and prejudicial abuse of discretion by the trial court, this Court will not interfere on appeal. *Hancock v. York*, (1967) 141 Ind.App. 212, 227 N.E.2d 187.

In the case at bar, we find no such abuse of discretion. Simply stated, LaCrosse was evidently unprepared to meet Hundt's arguments involving the safety regulations and when evidence in this regard was presented, it requested a continuance "until adequate discovery could be made into an area sought to be raised by the plaintiff for the first

take judicial notice of appropriate regulations rather than admitting the same as "exhibits."

time at trial." Admittedly, the situation in which LaCrosse found itself may have been unfortunate; we cannot perceive, however, in what manner it was "forced to suffer trial by ambush," when it is clear that the parties' pre-trial order did not restrict Hundt to any particular legal theory, and when Hundt's list of witnesses indicated there would be a representative from the Administrative Building Council called to testify. Under these circumstances, we believe the appropriate time for discovery was prior to the commencement of the trial. Moreover, LaCrosse has failed to suggest, even on appeal, in what precise manner it would have benefited from the requested continuance, since it offers "no credible showing of any defense of which [it was] deprived." *See Ayr-Way Stores, Inc. v. Chitwood, supra* 261 Ind. at 92, 300 N.E.2d at 339, where the Court concluded, "[i]n all candor, it appears that the defendants are alleging prejudice because the plaintiff has made a good case for recovery."

*Motion for Judgment on the Evidence*

The next issue raised by LaCrosse is whether the trial court erred in denying its motion for judgment on the evidence filed at the conclusion of the parties' evidence.[7] As we earlier observed, LaCrosse contended 1) Hundt was a licensee as a matter of law to whom no duty was breached; 2) he was guilty of contributory negligence as a matter of law; and 3) he incurred the risk of his injuries as a matter of law.

a) Was Hundt a Licensee?

In ascertaining the duty which a landowner owes to one who comes upon his land, Indiana law has long recognized the relationship between them is determinative of such duty. One who enters at the owner's express or implied invitation to transact business of mutual benefit to both is an invitee to whom the landowner owes a duty of reasonable care to protect against dangers, while one who enters for his own

7. In LaCrosse's brief, this issue is consolidated on appeal with an assignment in his Motion to Correct Errors that the jury's verdict was contrary to law.

convenience, curiosity, or entertainment is a licensee by permission, or a mere licensee, who (with certain exceptions) must take the premises as he finds them. *Swanson v. Shroat*, (1976) 169 Ind.App. 80, 345 N.E.2d 872, *Standard Oil Co. of Indiana, Inc. v. Scoville*, (1961) 132 Ind.App. 521, 175 N.E.2d 711. As a general rule, however, in cases where the evidence of material facts is in conflict, it is a matter for the jury to determine under appropriate instructions by the court whether a status of invitee or licensee is presented, and the question becomes one for the court only where the controlling facts are undisputed. *See Standard Oil Co. of Indiana, Inc. v. Scoville, supra.*

▮ LaCrosse contends Hundt was a licensee as a matter of law to whom no duty was breached because, on cross-examination, he acknowledged no one had forced or induced him to open the basement door and that "[t]he washing up would only help me." Even assuming this were the only evidence in the case, we do not believe Hundt must be viewed as a licensee as a matter of law. In *Silvestro v. Walz*, (1943) 222 Ind. 163, 51 N.E.2d 629, our Supreme Court addressed an analogous situation and concluded a jury might reasonably have found the plaintiff in that case was a business invitee. In *Silvestro*, the plaintiff took his car to an automobile repair shop to have the wheels realigned, and went looking for a washroom on the premises while he was there. In the course of his search, he fell down an unguarded stairway. On appeal, our Supreme Court stated the defendant's argument and its response as follows:

"It is insisted by appellant that an implied invitation to a customer extends only to that part of the proprietor's premises *necessary* for the transaction of their mutual business. He persuaded the trial court to so instruct the jury. The area is not so narrowly circumscribed. A customer is invited to all parts of the premises that may reasonably be expected to be used in the transaction of the mutual business, those incidental as well as those necessary."

*Silvestro v. Walz, supra* at 171, 51 N.E.2d at 632. Accordingly, our Supreme Court held "[h]e did not step out of the role of invitee when, responding to an urgent physical need, he entered in the belief that the areaway led to the toilet." *Id.* at 172, 51 N.E.2d at 632. In the case at bar, we believe similar reasoning may be applied to conclude Hundt was not necessarily acting as a licensee when he went looking for a washroom on the premises of LaCrosse. Moreover, the record also reveals there was additional testimony, not acknowledged by LaCrosse, creating an inference that Hundt's activity in looking for a place to wash his hands may legally be viewed as a *necessary* part of the job he was doing for LaCrosse. In this regard, Hundt's son stated the chemicals they were using were "very toxic" and "we had that chemical on us," and thus it was necessary to wash it off "because the chemical burns and if you get enough on you it would permeate your skin and could make you very deathly ill or could kill you." Similarly, Hundt himself testified "[t]here is no way you can keep from getting it [the chemical] on you" despite protective gloves and face shields, and that washing up "is just taken for granted" as "part of the job" and that "[m]y convenience has nothing to do with it." Under these facts, the jury was not required to conclude that Hundt was a mere licensee when he fell.

b) **Was Hundt Contributorily Negligent as a Matter of Law?**

▮ We next consider the argument raised by LaCrosse that as a matter of law, Hundt was guilty of contributory negligence in falling down the stairs in light of the undisputed facts that the door was closed and Hundt, who was familiar with the design of the building, had on numerous previous occasions been down the stairs as well as in the company's washroom.

Conceding that contributory negligence is generally a question for the jury, LaCrosse cites *Standard Oil Co. v. Henninger*, (1935) 100 Ind.App. 674, 196 N.E. 706 in support of its argument that Hundt was negligent as a matter of law. In that case, the plaintiff, Henninger, stopped at an unfamiliar gas

station to see a map. The attendant showed him a map and gave him directions, after which Henninger asked for and received permission to use the washroom. Although the attendant did not indicate which door led to the washroom, Henninger evidently assumed it was one particular door, opened it, and walked in without looking. As a result, his momentum carried him down a flight of stairs to his injury. Based on such facts, this Court concluded, with one dissenting vote, that a verdict for Henninger should be overturned and a new trial granted, since "[t]he evidence wholly fails to establish any legal duty owing to appellee" which was violated [8] and because "the conduct of the appellee, as disclosed by the uncontradicted evidence established contributory negligence" as a matter of law. *Id.* at 682, 195 N.E. at 709.

We find the facts in the instant case distinguishable from those in *Henninger*. In *Henninger*, the Court was evidently persuaded by the plaintiff's apparent negligence in opening an unfamiliar door and, *without looking*, proceeding forward so as to fall down an obviously normal and unremarkable flight of stairs. Presumably, had Henninger looked where he was going, the accident would not have occurred, and under such circumstances, courts have held a party may be contributorily negligent even when he testifies in court he did in fact look, since "[o]ne may not be absolved of the charge of contributory negligence by asserting he looked and did not see when if he had looked he would have seen." *Hardy v. Smith*, (1978) 61 Ill.App.3d 441, 19 Ill.Dec. 103, 378 N.E.2d 604, 606, discussed in *Smith v. Diamond*, 421 N.E.2d 1172 (Ind.App., 1981).

In the instant case, however, the facts as they appear are somewhat different. The undisputed evidence revealed the basement door opened inwards and there was no landing or handrail on the other side, making it unlike the situation in *Henninger* (where the only alleged negligence was a failure to lock the door), in which case the Court noted "[t]he closed door to the basement was not a trap or pitfall, and due precaution had been taken by the closing of the door against its improper use." *Standard Oil Co. of Indiana v. Henninger, supra*, 100 Ind.App. at 680, 196 N.E. at 709. Because of the different nature of the danger in the case at bar, we believe the jury was entitled to infer that Hundt's actions in opening the door and falling by virtue of his own momentum were not necessarily negligent or a "substantial factor in causing his injury," W. Prosser, Handbook of the Law of Torts (4th ed., 1971) at 421, since, according to the testimony, "he had to step into the door" to open it. As Hundt stated, "there was no looking." [9] In addition, as we noted above, Hundt, though familiar with the building, had never entered from the rear door, and cannot be charged with negligence, as a matter of law merely because he failed to realize at that moment which door led to the basement. *See*, in this context, *Town of Argos v. Harley*, (1943) 114 Ind.App. 290, 305, 49 N.E.2d 552, 557–58, a case involving a defect in a sidewalk known to the plaintiff where the Court stated, *quoting City of East Chicago v. Gilbert*, (1915) 59 Ind.App. 613, 628, 108 N.E. 29, 34:

> "[p]revious knowledge of a defect and forgetfulness of it are important facts to be considered in connection with all other circumstances in determining whether the party injured was exercising reasonable care. But it is not negligence, as a matter of law, for a person who has knowledge of a defect not to remember it at all times and under all circumstances."

---

8. In this regard, the Court observed the negligence upon which the action was founded "is that of failing to lock the door," *Id.* at 680, 196 N.E. at 709, and it concluded "[t]he closed door to the basement was not a trap or pitfall, and due precaution had been taken by the closing of the door against its improper use." *Id.* It was further held, "[u]nder the circumstances, it is not necessary for us to determine whether or not appellee was an invitee or licensee." *Id.*

9. Although Hundt acknowledged that by looking he would have been able to see there was no handrail or landing, he also testified "when I opened that door there and stepped in I expected a floor on the other side. You are asking me if I looked. I didn't have time for anything. I don't know."

Moreover, it is also significant that in the instant case, and unlike *Henninger*, it was never established at trial that Hundt did not look where he was going just prior to his fall. In his own testimony, Hundt stated merely that he couldn't remember any of the events surrounding the fall, except that he was sure he had his eyes open at the time, and his son, who stated he "could not say" where his father was looking, testified Hundt simply "opened the door and stepped in all in one movement" and that there wasn't any time to shout a warning before he fell. Under these facts, we believe the question of Hundt's contributory negligence was appropriately left for the jury.

c) Did Hundt Incur the Risk of his Injuries as a Matter of Law?

■ The final argument presented by LaCrosse in its motion for judgment on the evidence is that as a matter of law, Hundt must be said to have incurred the risk of his injuries. In this context, LaCrosse again cites the undisputed evidence that Hundt had been in the washroom and basement on numerous previous occasions and was familiar with the lack of a handrail and stairway landing. In an argument similar to that made on the question of Hundt's contributory negligence, LaCrosse in essence maintains that although Hundt may have momentarily "forgotten" which door led to the basement stairs and the danger associated with it, he was constructively aware of the danger at that time and thus voluntarily incurred the risk. Hundt's response, quite simply, is that he did not voluntarily incur the risk because he had never entered the building from that direction and "I opened that door for the bathroom door."

Our Courts have recently had occasion to consider the doctrines of "constructive" knowledge and "momentary forgetfulness" as they relate to the defense of incurred risk. *See Gerrish v. Brewer*, (1979) Ind. App., 398 N.E.2d 1298, and *Kroger Co. v. Haun*, (1978) Ind.App., 379 N.E.2d 1004. In *Haun*, the earlier of these cases, Judge Sullivan concluded that constructive knowledge of a danger has no connection to the doctrine of incurred risk, and that the deci-

sions of our Courts have unnecessarily been confused by "an infusion of the objective 'reasonable man' test into the incurred risk concept." *Kroger Co. v. Haun, supra* at 1008. Accordingly, in that case, involving plaintiff's use of a defective forklift device, the Court held:

> "We are of the belief that to hold that one may voluntarily incur a risk of which he had no actual knowledge, yet was required to know in the exercise of ordinary care, is a perversion of the doctrine. Failure to recognize a danger or risk may constitute unreasonable conduct and, therefore, contributory negligence, but it should never be considered a voluntary incurrence of a known risk."

*Id.* at 1009.

Even more relevant to the instant case, we believe, was the reasoning expressed in *Gerrish v. Brewer, supra*, where the Court, in applying the principles suggested by *Haun*, discussed the circumstance in which a known danger is momentarily forgotten. In that case, the plaintiff, a tenant in the defendant's apartment building who slipped and fell on a walkway obstruction which he earlier had brought to the defendant's attention, was unsuccessful in recovering for her injuries in the trial court and on appeal attacked the jury instruction on incurred risk because it omitted the "requirement that he know and appreciate the danger *at the time* he entered the passageway in question." *Gerrish v. Brewer, supra* at 1299. In response to such argument, this Court held knowledge and appreciation of the danger at the time of the accident is implicit in "voluntarily" deciding to incur the risk, and thus the instruction required no further explanation:

> "By definition, then, since the very essence of incurred risk is the conscious, deliberate and intentional embarkation upon a course of conduct with knowledge of the circumstances, the doctrine of 'momentary forgetfulness' cannot become a part of the doctrine of incurred risk. It is difficult to perceive how a plaintiff could consciously, deliberately and intentionally encounter a risk that he had for-

gotten about. The doctrine is correctly a part of the doctrine of contributory negligence, and the cases so hold. Therefore, the court did not commit error in not incorporating the doctrine of 'momentary forgetfulness' into an incurred risk instruction. It may be noted that the court did so instruct as related to contributory negligence." [10]

*Gerrish v. Brewer, supra* at 1301.

Based on the reasoning of *Gerrish v. Brewer, supra* and *Kroger Co. v. Haun, supra,* we cannot agree with LaCrosse that Hundt assumed the risk of his injuries as a matter of law. Regardless of whether one views Hundt's testimony as evidence that he momentarily forgot the risk of the dangerous stairway or that he merely made a mistake when he opened the door, the jury was entitled to conclude, in either event, he did not deliberately and intentionally embark on a course of conduct with knowledge of the circumstances. *Gerrish v. Brewer, supra.* While it is true, of course, that no

jury would be required to accept such testimony as true, we believe it should, nevertheless, have had the opportunity to do so, particularly where, as here, there was corroborative evidence in the form of Hundt's assertion he had never entered the building from that direction and that it was one of 127 establishments which he visited for similar reasons. Accordingly, the trial court was not required to direct a verdict for LaCrosse, nor was the jury's ultimate determination contrary to law.

*Other Arguments on Cross-Appeal*

■■■ The final arguments raised by LaCrosse concern an evidentiary objection to one of Hundt's exhibits [11] and errors assigned in connection with the Court's final instructions.

LaCrosse contends the trial court erred in the giving of certain instructions and in refusing to give others. These objections are as follows:

**10.** As the Court concluded in *Kroger Co. v. Haun, supra* at 1009, failure to recognize a risk may constitute *contributory negligence,* and this may include forgetfulness of a risk. *Gerrish v. Brewer, supra* at 1300, citing *Town of Argos v. Harley, supra.* In this context, we believe the doctrine of contributory negligence most accurately describes the language in *Clark v. City of Huntington,* (1920) 74 Ind.App. 437, 127 N.E. 301, 302, cited by LaCrosse to the effect that:

> "[a]s the appellant's decedent knew of the existence of the place of danger, and attempted to pass it when it was so dark that he could not see, he took the risk upon himself, even if at the time he had forgotten the existence of the obstruction, and, as his death resulted from the injury received under such circumstances, appellant cannot recover."

In that case, where the Court concluded the plaintiff's decedent "had to know that the pitfall was there," *id.* at 304, the fatal injuries occurred when the individual in question fell over a wall while walking in the dark on a city street which he used to go to and from work.

**11.** This issue involved the admission by the court of an exhibit (Exhibit 19) containing Hundt's medical bills. LaCrosse blandly asserts the introduction of these bills deprived him of a fair trial because they "contained declarations and statements by out-of-court declarants who are not available for cross-examination by the defendant." This alleged error relates to the damage issue and, since we con-

clude, *infra,* that a new trial must be conducted on this issue, we do not anticipate this precise question arising upon retrial. However, in this regard, we note that during the trial Hundt testified he had incurred doctors' expenses and medical bills as a result of his injuries and then attempted to read from his own compilation of those bills. When LaCrosse objected on the basis that Hundt was reading from an Exhibit which had not been admitted into evidence, the bills themselves were offered. LaCrosse then contended the bills were hearsay but the objection was overruled and Hundt was permitted to read the amount of each bill for the restricted purpose, as stated by the Judge, of showing merely that he received them. Under these circumstances we conclude the medical bills in question were not hearsay because the record reveals they were not offered for the truth of the matter asserted, that is, to establish the reasonableness of the charges, and thus did not rely on the credibility of out-of-court declarants. 12 I.L.E. Evidence § 101 at 66 (1980 Supp.), *citing Blue v. Brooks,* (1973) 261 Ind. 338, 303 N.E.2d 269; *Indianapolis Newspapers, Inc. v. Fields,* (1970) 254 Ind. 219, 259 N.E.2d 651, *cert. denied,* 400 U.S. 930, 91 S.Ct. 187, 27 L.Ed.2d 190; *Simmons v. State,* (1978) Ind. App., 371 N.E.2d 1316. We anticipate that, upon the retrial of this case on the issue of damages, plaintiff will present competent medical testimony concerning the reasonableness of these charges.

*Final Instruction No. 10*

Without any elaboration, LaCrosse objected at trial to the giving of an instruction on the administrative regulations discussed *supra* because "it is not supported by the evidence, it is an incomplete instruction as it is written and it alludes to a rule and regulations [sic] of the Administrative Building Council which said rule and regulation was not admitted into evidence or properly proven in court."

The instruction read:

"There was in force a statute in the State of Indiana which provided in part as follows:

'Every employer and every owner of a place of employment or public building ... constructed shall so ... maintain such place of employment or public building ... as to render the same safe, ... in accordance with the rules and regulations as promulgated by the Indiana Administrative Building Counsel [sic].' I.C. 22–11–1–17.

Further, there was in full force and effect in the State of Indiana, a rule and regulation of the Administrative Building Counsel [sic] that required a landing to be on each side of a door, and further required at least one handrail to be placed on a stairway.

If you find from a preponderance of the evidence that the defendant, LaCrosse Grain Company, Inc., violated the statute on the occasion in question, such conduct may constitute negligence on the part of the defendant."

 We find LaCrosse's objections to be without merit. Initially, we conclude his simple, ambiguous contention at trial that it is "incomplete" was insufficient to preserve any error on appeal, since "the trial judge is entitled to have specific, meaningful objection to instructions before their submission to the jury." *American Optical Co. v. Weidenhamer,* (1980) Ind.App., 404 N.E.2d

606, 621 (transfer pending), *citing Scott v. Krueger,* (1972) 151 Ind.App. 479, 280 N.E.2d 336; *Conley v. Lothamer,* (1971) 150 Ind.App. 356, 276 N.E.2d 602. Moreover, there clearly was evidence supporting the giving of such an instruction, and, as we have concluded earlier in this opinion, the language of IC 4–22–2–11, *supra,* dispenses with the requirement of proving regulations in court and provides the court "shall" take judicial notice of appropriate rules and regulations. IC 4–22–2–11, *Ross v. State,* (1977) Ind.App., 365 N.E.2d 1231. *See generally Bowen v. Metropolitan Board of Zoning Appeals,* (1974) 161 Ind.App. 522, 317 N.E.2d 193. Accordingly, LaCrosse has failed to present any case for relief with respect to this instruction.

*Final Instruction No. 15*

 LaCrosse next objects to one of several instructions given on contributory negligence.[12] Without considering the merits of such instruction, however, we conclude LaCrosse has waived any argument on appeal concerning its correctness by failing to distinctly indicate in the trial court the matter to which he objects and the grounds for his objection. Ind.Rules of Procedure, Trial Rule 52(C), *American Optical Co. v. Weidenhamer, supra.* The sole objection made by LaCrosse stated, without further comment or elaboration, that the instruction was an "improper statement of law in that it confuses the concept of contributory negligence and incurred risk." The trial court could not determine from this contention what was the precise nature of LaCrosse's objection.

*Refusal to Give LaCrosse's Tendered Instruction No. 4*

 Another issue raised by LaCrosse in its Motion to Correct Errors concerns the refusal of the court to give LaCrosse's Tendered Instruction No. 4, which read as follows:

peril which led to his fall or in the exercise of reasonable care under all of the like and similar circumstances should have known or appreciated the peril which led to his fall."

12. The instruction stated:
"Knowledge and appreciation of peril are essential elements of contributory negligence. For the plaintiff to be contributorily negligent he must have known and appreciated the

"You are instructed that if the plaintiff's knowledge of any alleged dangers in the defendant's premises equaled or surpassed that of the defendant's [sic], then the defendant is not liable to plaintiff for injuries resulting from those alleged dangers, and your verdict should be for the defendant."

We conclude the particular theory of contributory negligence which LaCrosse thus attempts to raise has no application to the case at bar, and accordingly, it was not error for the trial court to refuse to give the instruction. Our decision in this regard is based on the reasoning expressed in *Kroger v. Haun, supra* at 1015, where the Court determined the so-called "equal knowledge" doctrine of contributory negligence has been limited by recent decisions "to those instances in which (1) both plaintiff and defendant were 'active' participants in the injury-causing conduct, *see Dreibelbis v. Bennett, supra,* [(1974) 162 Ind.App. 414] 319 N.E.2d 634, and (2) plaintiff could no longer assume that defendant would exercise his duty of reasonable care. *See Phillips v. Croy, supra* [(1977) 173 Ind.App. 401] 363 N.E.2d 1283; *Hi-Speed Auto Wash, Inc. v. Simeri, supra,* [(1976) 169 Ind.App. 116] 346 N.E.2d 607." Regardless of whether Hundt may have had "notice" LaCrosse would not exercise its duty of reasonable care by erecting a landing or installing a handrail because it had not done so in the course of 20 years, we believe it is manifest from the record there was no evidence he was an active participant "in dangerous activities." *Dreibelbis v. Bennett, supra* 162 Ind.App. at 422, 319 N.E.2d at 639.[13] It follows from this conclusion that no error was committed in refusing LaCrosse's tendered instruction.

*Refusal to Give LaCrosse's Tendered Instruction No. 6*

▮▮▮▮ LaCrosse also alleges as error the trial court's refusal to give its Tendered Instruction No. 6 on contributory negligence, which stated:

"Under the laws of the State of Indiana there are no degrees of negligence, and if the plaintiff in this case was guilty of any negligence, however slight, and such negligence proximately contributed to his injury, he cannot recover, and your verdict should be for the defendant."

In its brief LaCrosse argues merely that the instruction should have been given because it is "a proper statement of law" which "embodied the defendant's theory of the case as supported by the evidence." We conclude, however, that various other instructions which were given did cover the issue of contributory negligence and the parties' burdens of proof, among them final instructions 5, 7, 8, 14 and 15. We note for example that Final Instruction No. 14, after first defining contributory negligence, informed the jury: "[i]f you find that the plaintiff was guilty of contributory negligence that proximately contributed to his injury, then the plaintiff cannot recover from the defendant regardless of his injuries, even if the defendant was negligent." If the subject-matter of a tendered instruction is adequately covered by other instructions, it is not error to refuse to give it. *Thornton v. Pender,* (1978) 268 Ind. 540, 377 N.E.2d 613.

*Refusal to Give LaCrosse's Tendered Instruction No. 9*

▮▮▮ We similarly conclude LaCrosse's Tendered Instruction No. 9 concerning proximate cause was adequately covered by other instructions. The tendered instruction read:

"You are instructed that if you are unable to determine from all the evidence in this case what was the proximate cause of the injuries to the plaintiff, then your verdict should be for the defendant."

In its brief, LaCrosse contends, quoting *Bain v. Mattmiller,* (1938) 213 Ind. 549, 13 N.E.2d 712, where a similar instruction was approved, that the purpose of this instruc-

---

**13.** In *Dreibelbis,* where the Court held contributory negligence was not established as a matter of law since "[c]omparative knowledge of participants in a hazardous activity" was not involved, the plaintiff Dreibelbis, was injured while directing traffic at the scene of an accident. *Dreibelbis v. Bennett, supra* at 422, 319 N.E.2d at 639.

tion was to inform the jury it "must be able to determine that the proximate cause of the injury was the negligence set out in the complaint, and if they are unable to determine this, they cannot find for the plaintiff." *Id.* at 555, 13 N.E.2d at 714. With respect to these issues, we believe the jury was adequately informed by Final Instructions 3, 4 and 8 which defined proximate cause and burden of proof, and which further informed the jury, in Final Instruction No. 8, "that it is the burden of the plaintiff to prove the proximate cause of his injuries." In this regard, Final Instruction 3 stated:

"By burden of proof is meant that, considering all of the evidence in the cause, the evidence tending to establish a given fact must outweigh the evidence to the contrary. If, after considering all the evidence in the cause, you shall find that the evidence upon any question is evenly balanced, you should answer such question against the party who has the burden of proof on that issue, for in such a case there would be no preponderance in favor of such proposition."

*Final Instruction No. 17*

Unlike the other assignments of error discussed herein, we conclude with LaCrosse that the trial court did commit error in giving its Final Instruction No. 17, to the extent that instruction allowed Hundt to recover damages for future medical care, treatment and services, despite the fact there was no evidence in the record supporting such instruction. The instruction in question stated:

"If you find for the plaintiff, Everett Hundt, on the question of liability, you must then determine the amount of money which will fairly compensate Everett Hundt for those elements of damage which will prove by the evidence to have resulted from the negligence of the defendant, [sic] you may consider:

1. The nature and extent of the injuries; whether the injuries are temporary or permanent; the physical pain and mental suffering experienced and reasonably certain to be experienced in the future as a result of the injuries.

2. The value of lost earnings and loss and impairment of the earning capacity.

3. Disfigurement or deformity resulting from the injuries.

4. The reasonable expenses of necessary medical care, treatment and services, *and the reasonable expenses of future medical care, treatment and services.*"

You are to determine whether these elements of damage have been proved by a consideration of the evidence relating to damages. Your verdict must be based on that evidence and not on guess or speculation.

The mere fact that some elements of damage are not susceptible to exact measurement should not cause you to ignore them or fail to fully and fairly compensate the plaintiff. You should consider all elements of damage and give them such weight and consideration as you feel is justified from the evidence in this case." (Emphasis added.)

Significantly, while the record revealed evidence that at the time of trial Hundt continued to suffer from medical disabilities, including problems with his vision and frequent severe headaches requiring large doses of aspirin, there was no evidence relating to the reasonable expense of future medical care, treatment and services which such continuing injuries might occasion, which evidence is necessary for the giving of such an instruction. *Dayton Walther Corp. v. Caldwell*, (1979) Ind.App., 389 N.E.2d 723, 729–33; 393 N.E.2d 208 (on petition for rehearing). It is settled law in this State that it is error to give an instruction on an issue on which there is no evidence, *Cooper v. High*, (1974) 262 Ind. 405, 317 N.E.2d 177, citing *Baker v. Mason*, (1968) 253 Ind. 348, 242 N.E.2d 513 and *Rondinelli v. Bowden*, (1973) 155 Ind.App. 582, 293 N.E.2d 812, and that such an error is not necessarily rendered harmless by an instruction that the jury shall confine its consideration to the evidence. *E. g., Conder v. Rowley*, (1941) 109 Ind.App. 268, 34 N.E.2d 162.

In this context, our Supreme Court has held that although it is error to give an instruction which is not supported by the evidence, such error requires reversal only where it appears the appealing party was prejudiced thereby. *Baker v. Mason, supra.* Thus, it is not reversible error, for example, to give an instruction on "sudden emergency" where the jury must in any event have applied the appropriate legal standard or else concluded the instruction was inapplicable to the facts before it, *Baker v. Mason, supra,* nor is reversal required with respect to an instruction which was given on necessary medical and hospital expenses when it is undisputed there could have been no medical or hospital expenses because the parties in question were killed outright and were dead when they were removed from the scene of a collision. *Brattain v. Herron,* (1974) 159 Ind.App. 663, 309 N.E.2d 150. In the instant case, however, and in contrast to such other situations, it is clear LaCrosse was prejudiced by the instruction in question, since Hundt presented significant evidence of continuing medical problems existing at the time of trial which would reasonably require future medical care, *while failing to present any evidence of the likely cost of such care.* Under these circum-

stances, we cannot say "there can be no doubt as to how a jury could reasonably react to such an instruction." *Baker v. Mason, supra* 253 Ind. at 354, 242 N.E.2d at 517.

Accordingly, we conclude that based on the error committed in the giving of Final Instruction No. 17 insofar as future medical expenses are concerned,[14] LaCrosse is entitled to a new trial on the issue of damages. Since it is impossible to determine what part of the total award of $25,-000 may have been based on a speculative determination of such future expenses, a new trial must necessarily encompass all of the damages alleged, including those incurred before trial.

In awarding such relief, we observe our Courts have held a trial court may grant a partial new trial pursuant to Ind. Rules of Procedure, Trial Rule 59(E), *Pepsi Cola Bottling Co., Inc. v. Polk,* 424 N.E.2d 1038 (Ind.App., 1981); *Borowski v. Rupert,* (1972) 152 Ind.App. 9, 281 N.E.2d 502, and that an appellate tribunal may afford the same relief pursuant to Ind. Rules of Procedure, Appellate Rule 15(N).[15] *E. g., Dayton Walther Corp. v. Caldwell,* 393 N.E.2d at 209 (on petition for rehearing). *See also*

---

14. Although LaCrosse also maintains this instruction was erroneously given because it "disregards entirely the issue of licensee and invitee," we conclude no error was committed in this respect. The instant instruction is clearly nonmandatory since it does not "attempt to set forth specific facts such that the jury is required to reach a certain result upon a finding of those facts," *Kroger v. Haun, supra* at 1016, and our Courts have repeatedly held all such nonmandatory instructions must be considered together to determine whether the jury was properly instructed, *Kroger v. Haun, supra,* and that all applicable law need not be included in one instruction. *Palmer v. Decker,* (1970) 253 Ind. 593, 255 N.E.2d 797. With this background, we conclude there are a variety of other instructions which addressed the distinction between a licensee and invitee, including final instructions 9, 11, 12 and 13. Of these, Final Instruction No. 13, in particular, informed the jury that "[t]he owner or occupant of a premise is not under any legal duty to keep the premises free or safe from dangers of obstructions, pitfalls, excavations, trapdoors, or other defects." Final Instruction No. 11 provided definitions of invitees and licensees, and Final

Instruction No. 12 instructed the jury, in part "to determine plaintiff's status as a licensee or invitee by reference to the exact time and place of injury."

15. That Rule provides, in part:

"(N) Order or Relief Granted on Appeal. An order or judgment upon appeal may be reversed as to some or all of the parties and in whole or in part. The court, with respect to all or some of the parties or upon all or some of the issues, may order:

(1) A new trial;

\* \* \* \* \* \*

(6) Grant any other appropriate relief, and make relief subject to conditions.

The court shall direct final judgment to be entered or shall order the error corrected without a new trial unless such relief is shown to be impracticable or unfair to any of the parties or is otherwise improper; and if a new trial is required it shall be limited only to those parties and issues affected by the error unless such relief is shown to be impracticable or unfair . . . ."

with respect to the similar federal practice, 6A J. Moore Federal Practice ¶ 59.06 (2d ed. 1976). In determining whether it is appropriate to award such relief, it is necessary to consider whether " 'it clearly appears that the issue to be retried is so distinct and separable from the others that a trial on it alone may be had without injustice,' " *Borowski v. Rupert, supra* 152 Ind.App. at 16, 281 N.E.2d at 506, *quoting Gasoline Products Co. v. Champlin Refining Co.,* (1931) 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188; Annot., 85 A.L.R.2d 9, 12 (1962). Moreover, where a new trial is limited solely to damages, it is especially important to consider any evidence, such as inadequate damages and a close question on liability, suggesting the jury may have compromised its verdict, since in such circumstances a new trial on damages alone is improper. *McNall v. Farmers Insurance Group,* (1979) Ind.App., 392 N.E.2d 520 (trier of fact found in favor of plaintiff in hotly contested action but awarded no damages); *Hudson v. Dave McIntire Chevrolet, Inc.,* (1979) Ind.App., 390 N.E.2d 179 (both parties agreed damages of only $177.78 on defective automobile purchased for $2,944 were "clearly inadequate" assuming the liability of the defendant); *State v. Tabler,* (1978) Ind.App., 381 N.E.2d 502 (in an accident involving the collision of two trucks, the estate of one deceased plaintiff was awarded no damages, her nine-year-old son, who lost both legs as a result of severe burns, was awarded the equivalent of only $3.16 a day for his life expectancy, and the other driver—who suffered 85 per cent disability, $12,000 in lost wages and who also incurred $31,000 in medical bills—was awarded only $7,500 in his claim the accident was caused by a defective highway.)

 In the instant case, however, where there is no evidence the jury compromised its verdict and thus the issue of liability was appropriately determined, we believe the error occasioned by improperly giving an instruction pertaining to damages presents a "distinct and separable" issue for new trial. *Borowski v. Rupert, supra* 152 Ind. App. at 16, 281 N.E.2d at 506. *See, e. g., Yodice v. Koninklijke Nederlandsche*

*Stoomboat Maatschappij,* (2d Cir. 1971) 443 F.2d 76, *cert. denied,* 411 U.S. 933, 93 S.Ct. 1902, 36 L.Ed.2d 393, and *May Department Stores Co. v. Bell* (8th Cir. 1932) 61 F.2d 830, involving new trials on damages alone where the juries were improperly instructed on the measure of damages, but such instructions could not have affected the determination of liability. Indeed, an almost identical question has recently been addressed by this Court in the opinions rendered in *Dayton Walther Corp. v. Caldwell, supra.* In that case, Rhonda Caldwell brought suit against various parties including the manufacturer and seller of a heavy equipment trailer after the trailer became disconnected from a truck driven by a third party and collided with Rhonda Caldwell's car. She was awarded $800,000 in damages. On appeal, the defendants presented numerous specifications of error, including the contention that the Caldwell's attorney improperly informed the jury during final argument that it could award damages for epilepsy and meningitis which might possibly develop as a result of injuries sustained in the accident. This Court agreed that error was committed in so informing the jury, and a new trial was ordered on the sole issue of damages. Although the defendant Dayton Walther contended, citing *State v. Tabler, supra,* the trial should include the issue of liability as well as damages, this Court responded on rehearing as follows:

"In the case at bar the issue of liability was resolved by the jury adversely to Dayton Walther and Stockberger. Dayton Walther argued on appeal numerous specifications of error. This court carefully considered each of Dayton Walther's allegations but determined that Dayton Walther had demonstrated error only with regard to the final argument as it related to the computation of damages.

No one has suggested that the damages awarded Rhonda Caldwell were inadequate. To the contrary, Dayton Walther has steadfastly maintained that the amount awarded was excessive. While the decision reached in *Tabler* was based

upon evidence that the jury had compromised its verdict, no evidence of a verdict by compromise exists in the case at bar.

Dayton Walther, Stockberger, and Rhonda Caldwell have previously had a fair opportunity to present to a jury their respective positions on liability. Rhonda Caldwell has requested that the new trial be limited to the issue of damages. Dayton Walther has not demonstrated that such a limitation would be impracticable, unfair, or otherwise improper." [16]

*Dayton Walther Corp. v. Caldwell*, 393 N.E.2d at 210 (on petition for rehearing). We similarly conclude in the instant case, where neither party has contended the award of $25,000 to Hundt for damages including $1,946 in medical bills and $4,000 in lost earnings is either inadequate or excessive, and where it is evident the jury has rejected LaCrosse's principal defenses of contributory negligence and incurred risk with respect to a dangerously constructed stairway, that a new trial on the question of damages only is the appropriate relief for the improper giving of an instruction on future medical expenses.

For the reasons and authorities stated herein, the decision of the trial court is reversed, and a new trial ordered on the issue of damages only.

CHIPMAN, P. J., and GARRARD, J. (sitting by designation), concur.

---

[16] In a footnote the Court observed "Dayton Walther implies that the decision as to liability may have been influenced by the [allegedly improperly admitted] evidence concerning damages. Nevertheless, such evidence was admitted without proper objection. The error necessitating reversal related only to comments concerning elements to be included in the computation of damages."